# OCTOBER, 1929.

SECURITY STATE BANK, RESPONDENT, v. F. A. GRAY, APPELLANT.

Kansas City Court of Appeals. December 2, 1929.

*Omar E. Robinson* and *Henry L. Jost* for respondent.

*William B. Dickinson, Alfred D. Hillman* and *Martin B. Dickinson* for appellant.

BARNETT, C.—This is a suit on a guaranty. There was a verdict and judgment for plaintiff in the sum of $3,593.27. Defendant has appealed.

On April 23, 1917, Security National Bank of Kansas City, Missouri, received a letter from defendant, one of its stockholders, which was as follows:

"One of my clients, Mr. J. O. Young of the Kawnear Cabinet Company, tells me he wants to change his account to your bank and wants to get a loan of $5000 for four months at five per cent. . . .

"I will personally see that this note is paid if the loan is made to the Kawnear Cabinet Company."

On or about March 1, 1921, C. W. Sheldon became vice-president of the Security National Bank. In going over the notes held by that institution he found an unpaid note dated January 7, 1921, executed by the Kawnear Cabinet Company by J. O. Young, president, and bearing the endorsement of J. O. Young. This note was for $4547, payable ninety days after date. Mr. Sheldon requested the defendant to execute a new guaranty, and in compliance with that request the defendant executed an instrument which reads as follows:

"Kansas City, Mo.,
"March 7, 1921.

"Security National Bank, of Kansas City, Mo.

"The undersigned hereby requests you to give and continue to The Kawnear Cabinet Company (hereinafter styled the borrower) credit from time to time for five thousand dollars; and in consideration of your doing so, and for value received, and for the purpose of enabling the borrower to obtain such credit, the undersigned hereby promises and agrees to make to you prompt payment, as they severally mature, of all overdrafts by the borrower, of all loans made of which may be made by you to the borrower, and of all notes, acceptances and other paper which have been or may be by you discounted for the borrower, whether made, drawn, accepted, endorsed or not endorsed by the borrower, as well as any and all renewals thereof. This is intended to be a continuing promise and agreement, and shall apply to and cover any and all such overdrafts, loans, discounts, and renewals made prior to notice in writing, given to your cashier that the undersigned will not be liable upon any such overdrafts, loans or discounts made after the receipt of such notice. When any such overdrafts, loans or paper, or any renewal thereof, shall become and remain due and unpaid, the undersigned will on demand, pay the amount due thereon.

"Notice of the making or renewal of any such overdrafts, loans or paper, protest for non-payment, thereof, and notice of acceptance hereof are hereby expressly waived.

"(Signed) F. A. GRAY."

On April 13, 1921, the Security National Bank renewed this note by taking a new note dated April 13, 1921, for the sum of $4598.80, payable on May 7th after date, signed by J. O. Young, and endorsed on the back as follows: "Kawnear Cabinet Company, by J. O. Young, president." In the Spring of 1921 the stockholders of the Security National Bank formulated a plan to liquidate the bank and surrender its charter and to organize a new bank under the laws of Missouri, to be known as the Security State Bank. The defendant participated in the organization of the state bank and gave power of attorney to one Eaton to represent him at a meeting of the stockholders for the purpose of carrying out the plan. De-

fendant signed an instrument designated "Stockholders consent. and agreement" wherein he agreed to the liquidation of the old bank and the formation of the new, the assignment of part of the assets of the old bank to the new, and agreeing to take twenty-five shares of the capital stock in the new bank for twenty-five of his shares in the old. Part of the assets of the old bank were to be taken over by a corporation known as the Security Mortgage Company. This plan was executed, defendant received twenty-five shares of stock in the new bank, and a part of the assets of the old bank were conveyed to the new, including the note of April 13, 1921, signed by J. O. Young and endorsed by the Kawnear Cabinet Company.

After the new bank was opened for business Mr. Sheldon, who had become vice-president of the new state bank, at the direction of the board of directors of plaintiff, wrote defendant a letter asking that defendant's note be given in place of Young's. In response to this letter defendant wrote Sheldon on June 18, 1921, as follows:

"Your letter of the 16th recd. I do not care to assume the Young debt, or sign a note for it.

"Mr. Young told me he turned over to Mr. Woods real estate enough to cover it.

"When you and Mr. Young settle up, if he still owes you a part of the loan I will settle it up, but I do not care to become involved now."

Thereafter, on June 23, 1921, plaintiff renewed the note dated April 13, 1921. The renewal note was made payable August 21st after date and was executed by Kawnear Cabinet Company as maker and endorsed on the back by J. O. Young. This renewal note was taken up by another renewal note which in turn was renewed. After a number of renewals a note dated February 17, 1922, was executed by Kawnear Cabinet Company and endorsed by J. O. Young. It was payable ninety days after date and bore interest at the rate of eight per cent per annum and was payable in the sum of $3617.14, that being the unpaid balance at the time of the last renewal. In nearly every instance when the loan was renewed the former note was marked "paid by renewal" and in every instance the old note was surrendered when the new note was taken. Plaintiff, the new state bank, reduced this note to judgment by suit and then brought suit against defendant as guarantor.

In plaintiff's petition it is alleged that defendant for value received executed the guaranty dated March 17, 1921, and that theretofore Security National Bank had loaned to the Kawnear Cabinet Company approximately $5000, pursuant to a written request executed by defendant to said bank dated April 23, 1917; that after the execution and delivery of the guaranty dated March 17, 1921, the Security National Bank and its successors in interest, the Security State Bank, from time to time renewed the note of Kawnear

Cabinet Company which had theretofore been executed to Security National Bank, and did on June 30, 1922, extend to Kawnear Cabinet Company the privilege of again renewing said indebtedness amounting to the sum of $2463.45, and did on that day take a renewal note from the Kawnear Cabinet Company whereby said company, for value received, agreed to pay the Security State Bank said sum of money, ninety days after date with interest. It is also alleged that defendant was a stockholder and had shares of capital stock in the Security National Bank; that on June 1, 1921, defendant with other stockholders of said bank voted to surrender said stock and to place said Security National Bank in voluntary liquidation, and said bank was voluntarily liquidated and its charter surrendered; that defendant and other stockholders of said bank organized the Security State Bank, plaintiff herein, and applied for and obtained a charter from the State of Missouri for said state bank, and the defendant and other stockholders of the Security National Bank transferred the assets of the national bank, including the note of the Kawnear Cabinet Company and the guaranty contracts executed by defendant to the state bank, and that the state bank thereupon became the owner of the note and the guaranty. It was further alleged that on June 18, 1921, defendant again in writing agreed and promised to pay the indebtedness of the Kawnear Cabinet Company. It was alleged that by reason of the facts therein stated the Security State Bank succeeded to and became the owner of the note and the guaranty.

The answer was a general denial, together with allegations that on June 30, 1921, the Security National Bank paid all of its obligations and was duly dissolved on June 31, 1921; that the note dated April 13, 1921, for $4598.80 payable to the Security National Bank and signed by J. O. Young and endorsed by the Kawnear Cabinet Company was paid on June 23, 1921, and no further credit was extended to Kawnear Cabinet Company or to J. O. Young by the Security National Bank. There was a specific denial that defendant ever signed any promise or agreement to guarantee any indebtedness whatever to Security State Bank.

## OPINION.

This action may not be maintained on the first guaranty executed by defendant. That guaranty merely bound the defendant to pay a loan of $5000 for four months at five per cent made by Security National Bank to Kawnear Cabinet Company. There was no agreement that the terms of such a loan might be altered, and when that loan was renewed the alteration of the principal contract released the guaranty. Furthermore, it conclusively appears that the second guaranty was substituted for the first.

The guaranty dated March 7, 1921, was addressed to Security National Bank. It requested that bank to give and continue credit to the Kawnear Cabinet Company for $5000. The defendant agreed "to make *to you* prompt payment, as they severally mature of all overdrafts by the borrower, of all loans made or which may be made *by you* to the borrower." It provided for a termination of the continuing guaranty by notice, in writing, "given to your cashier." It therefore follows that this guaranty could not be accepted by anyone except the Security National Bank. [Mechanics' National Bank v. Rowell, 182 S. W. 989; Jobes v. Miller, 201 Mo. App. 45.] The instrument is a continuing offer of guaranty. The distinguishing feature of such an offer is that when it has been accepted and has thus become a contract, it still remains an offer as to future loans and renewals. When Security National Bank loaned money to the Kawnear Cabinet Company upon the faith of the offer of the guarantor, then there was a complete contract of guaranty; but the whole offer was not thus merged in the contract. It might be accepted again and again by making additional loans, so long as the total amount was not in excess of the sums stipulated in the offer; or it might be accepted repeatedly by making renewals. There are statements to the effect that the guaranty of a negotiable note is assignable. They proceed upon the theory that it must be contemplated by the parties that a negotiable note is likely to change hands, and it will not be presumed that it was intended that the payee must strip the note of its security in order to exercise his right to negotiate the note. We think that this guaranty was assignable to the extent that it would follow the note which it secured, notwithstanding the fact that it was addressed to the Security National Bank. The guaranty was a covenant running with the note. The fact that the offer was directed to a particular bank prevented any other person from accepting the offer, but that fact is not inconsistent with the idea that the note taken pursuant to the offer of guaranty could be assigned without sacrificing the security. [McGowan v. Wells, 213 S. W. (Ky.) 573; Jobes v. Miller, 201 Mo. App. 45, 209 S. W. 549; 28 C. J. 945.]

We therefore conclude that when Security National Bank assigned to Security State Bank one of the renewal notes which had been taken upon the faith of the offer of guaranty, the state bank not only acquired title to the note but also acquired the right to require the defendant to pay the same as guarantor. However, after the state bank acquired the renewal note taken pursuant to the offer of guaranty, it renewed this note by a contract to which the guarantor was not a party. It is one thing to hold that the right to assign the note carried with it the right to assign the guaranty, but it is another thing to hold that the assignment of the guaranty carried with it the unaccepted offer to guarantee the performance

of new and as yet unexecuted obligations. There is much said in the briefs about the rule as to when the taking of a new note and the cancellation of the old constitutes payment of the old note, and when the taking of the new note is considered not to be a satisfaction of the original debt. The refinements of that doctrine are unimportant here. Whether taking a new note discharged the original debt or not, yet Security National Bank might indulge in that practice without releasing the guarantor; because the guaranty was, by express terms, extended to renewals. A renewal has been held to be the substitution of a new obligation for an old one. It is a new promise to pay substituted for the old. [Daggett v. Daggett, 124 Mass. 149; Tannenbaum v. Bloomingdale, 58 N. Y. Sup. 235; Kedey v. Petty, 54 N. E. 798; Lime Rock Bank v. Mallett, 34 Me. 547; Germania Life Ins. Co. v. Peetz, 47 S. W. 687; Quinn v. Valiquette, 68 Atl. 515; Lowry National Bank v. Fickett, 50 S. E. 396; Leavitt v. Maykell, 89 N. E. 1036; City National Bank v. Stoeckel, 132 Atl. 20; Edwards v. Goode, 228 Fed. 664; Parchen v. Chessman, 164 Pac. 531.]

Nevertheless, the offer of guaranty of the renewals, whether effected by substituting a new obligation for the old, or by taking new evidence of the original debt and modifying the original contract by extending the time of payment, was directed to the Security National Bank. When the Security State Bank renewed the note, then it acted upon an offer which was not addressed to it. It is of no consequence whether a renewal discharges the original obligation or whether it merely extends the time of payment; because a guarantor is discharged from liability both by an alteration and by a discharge of the principal contract. [First National Bank of Springfield v. Leavitt, 65 Mo. 562.]

The distinction between a guaranty of commercial paper and a merely offer of guaranty has been recognized in the case of Schoonover v. Osborne (Iowa), 79 N. W. 263. An action was brought against defendant upon an instrument which recited as follows:

"I hereby agree to be security to Shaw and Schoonover for whatever sum of money they have, or may hereafter let my sons, Osborne brothers, have to use in their business."

Pursuant to this continuing guaranty, Shaw and Schoonover, partners, loaned money to Osborne brothers. Thereafter, Schoonover purchased the interest of his partner in the firm's assets and continued business. He then made further loans to Osborne brothers, relying upon the offer of guaranty. The court held that under the code of Iowa a contract of guaranty was assignable, and then said:

"We have no doubt that the obligation of the guarantor to the firm of Shaw and Schoonover for the balance due them by Osborne brothers at the time they dissolved was assignable and that Shaw became the owner thereof, and had the right to enforce the same.

This is what is held in Bank v. Carpenter, 41 Iowa, 518, but that is quite a different proposition from the claim that Shaw could act upon David Osborne's guaranty after the dissolution of the firm of Shaw and Schoonover. In one case it is a completed contract which is assignable. In the other it is a mere offer of guaranty to a particular firm which is inoperative until acted upon by that firm, and this offer cannot be assigned for the reason that the guarantor has the right to select his own creditor. If he does not have that right, then there is no difference between a general guaranty and one addressed to particular persons. That there is a difference, all authorities are agreed, and in principle there must be; for it cannot be that one may make another a debtor without his consent and against his protest."

Respondent contends that defendant is estopped to make the defense that the offer of guaranty did not run in favor of the assignee because he was a stockholder in both the new bank and the old; that he voted in favor of a resolution to disincorporate the old bank and to organize the new and to transfer the assets from the old bank to the new, including the note of the Kawnear Cabinet Company and the guaranty which secured it. It is claimed that he should not be permitted to contend that the action which he helped to authorize had the effect of stripping the note of its security. We have already pointed out that the assignment of the note had no such effect. The national bank assigned both the note and the security, and it was within the power of the state bank, as assignee, to compel the defendant to pay the note according to his stipulation. To say that the guarantor, in voting upon the resolution, thereby made an offer of guaranty to the state bank is not justified upon any principle of estoppel. The guarantor had the absolute right to withdraw the continuing offer to guarantee further notes and renewals by a mere notice. By voting for a transfer which would have that effect, he gained nothing which was not already his under the express terms of his contract. The defendant did nothing more in reference to the disincorporation of the national bank, the organization of the state bank, and the transfer of the assets from one to the other, than was done by the other stockholders. There is no evidence that defendant's attention was called to his guaranty at any time when he did any of the acts which are claimed to work an estoppel. The conveyance of the assets was in the broadest terms imaginable. Defendant had the right to vote upon the proposition of the disincorporation of the old bank, the formation of the new, and the transfer of the assets, upon the same terms as every other stockholder, and neither the new bank nor the old, nor any officer or stockholder thereof, had the right to limit his participation in the meetings by a condition that he should make himself individually liable upon his personal contract beyond any personal lia-

bility which would attach to other stockholders by reason of participation in the meetings. [14 C. J. 845, 898.]

It is claimed that defendant became liable by reason of a new promise made by him to the plaintiff. This is based upon the fact that the vice president of the state bank on June 14, 1921, at the direction of his board of directors, wrote defendant and asked that his note be given in place of the note which the bank then held. In response to this letter defendant wrote a letter to the vice-president, in which he said:

"I do not care to assume the Young debt or sign a note for it. . . . When you and Mr. Young settle up, if he still owes you a part of the loan I will settle it up but I do not care to become involved now."

As to the existing indebtedness, this promise was a *nudum pactum*. Defendant received nothing of value and the bank parted with nothing of value by reason thereof. Plainly, the letter was not an offer of guaranty. It did not invite the bank to extend further credit nor did it promise to pay if further credit was given. So far as the contention that this was a construction of the contract by the parties is concerned, it is sufficient to say that the contract is not ambiguous.

Respondent contends that Security National Bank and Security State Bank constituted the same corporation which had changed its name and amended its charter. If that is true then defendant is liable. But the evidence shows that the state bank was incorporated while the national bank was still in existence. The two banks entered into a contract with each other whereby the state bank acquired assets of the national bank. The national bank then disposed of other assets to a mortgage company in order to open the path for dissolution. Conceding that a bank may be changed from a national bank to a state bank without losing its corporate identity, yet the evidence shows that no attempt was made to modify the charter of the national bank. The plan adopted in this case whereby the national bank disposed of its assets to the state bank and to a mortgage company and thereafter disorganized was almost identical with the plan pursued in the case of Mechanics' American National Bank v. Rowell, 182 S. W. 989, in which case our Supreme Court held that the new bank could not act upon the unaccepted offer contained in the continuing offer of guaranty which was addressed to the old bank. The judgment should be reversed. This commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is adopted by the court. The judgment is reversed. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.

## On Motion for Rehearing.

Respondent insists that this court erred in stating that it was of no consequence whether a renewal discharges the obligation or whether it merely extends time of payment; because the grantor is discharged from liability both by an alteration and by a discharge of the principal contract. It is claimed that this decision is in conflict with the decisions of the Supreme Court in the cases of West v. Brison, 99 Mo. 684; Harburg v. Kempf, 151 Mo. 16, and Mercantile Trust Co. v. Donk, 178 S. W. 113. Those decisions announce the proposition that a guarantor or a surety is not discharged by an agreement to extend the time .of payment of the original obligation unless the extension be upon a sufficient consideration and for a definite time. They are cases where there was a mere promise to forbear without surrendering the old note or taking a new one, or where a new note was taken payable on demand. We do not consider these cases in conflict with the case of First National Bank of Springfield v. Leavitt, 65 Mo. 562, cited in the original opinion. It appears from the statement that when the renewals were taken the old notes were surrendered. We failed to mention the fact that the evidence showed that the renewal notes taken by the Security State Bank all provided for interest at the rate of eight per cent per annum from maturity until paid. The first of these renewal notes was taken on June 23, 1921. Another was taken on August 21, 1921, and another was taken on February 17, 1922. The record shows that interest was charged for the full time that the money was loaned, thus indicating that interest was charged in advance on these renewal notes. Under the circumstances the renewals constituted either a discharge of the original indebtedness or a binding obligation to extend the time of payment for a definite period according to the intention of the parties. There is no evidence that justifies the conclusion that it was the intention of the parties to leave the original obligation intact so that the plaintiff, as holder of the note executed to the Security National Bank might, at any time, sue thereon after the date of its maturity. The case of First National Bank of Springfield v. Leavitt, supra, has never been overruled. [State Bank v. Hafferkemp, 315 Mo. l. c. 475; White v. Smith, 174 Mo. 186, 1. c. 206; Johnson v. Franklin Bank, 173 Mo. 171, 1. c. 180.]

We are convinced that what was said in the original opinion, with this explanation, should stand. The motion for rehearing should be overruled. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is adopted by the court. The motion for rehearing is overruled. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.