[Civ. No. 5310. Fourth Dist. Mar. 26, 1956.]

CALCOT ASSOCIATION, LTD. (a Corporation), Respondent, v. COAST COTTON MILLS (Corporation's Fictitious Name) et al., Defendants; J. M. ADAMO et al., Appellants.

V. P. DiGiorgio and Thomas R. Davis for Appellants.

Baker, Palmer, Wall & Raymond for Respondent.

CONLEY, J. pro tem *—Calcot Association, Ltd., a cooperative association for marketing cotton, organized pursuant to the Agricultural Code, sued the defendant Southern California Textile Industries, a corporation, by the fictitious name under which it did business, Coast Cotton Mills, for $11,670.47 as the principal balance due on the sale of cotton, and defendants and appellants James A. Adamo and E. T. Combs on their written guaranties to pay, respectively, two-thirds and one-third of a line of credit granted to the mills up to and including $12,000. Judgment by default was entered against the mills and, after trial, against the appellant guarantors for their respective portions of the total.

The guarantors Adamo and Combs, sole stockholders of the corporation, owned, respectively, two-thirds and one-third of the capital stock. Both were actively engaged in the business of the mills and Adamo had other business interests as a carpet manufacturer involving the use of the cotton yarn

*Assigned by Chairman of Judicial Council.

spun by them. For several years the mills had bought cotton from plaintiff, sometimes on a cash basis, sometimes on a 60-day credit basis, but in August, 1953, the plaintiff, through its assistant manager George T. Akers, Jr., notified E. T. Combs of the mills that no further credit would be extended and no further shipments made unless Adamo and Combs would execute written guaranties. This they agreed to do and the guaranties are as follows:

"August 26th-1953.

"Calcot, Ltd.
  Box 3217
  Bakersfield, California

Attention Mr. Kennedy

"Dear Mr. Kennedy:

"Confirming conversation with your Mr. Akers over the telephone regarding extension of credit to the Coast Cotton Mills, it is deemed advisable that Mr. Adamo and I guarantee the extension of credit to the corporation on the basis of ownership of stock, namely one third and two thirds. Therefore, I am glad to guarantee the sum of $4,000.00, one third of the agreed $12,000.00 extension of credit.

"I am glad to maintain this personal guarantee of one third of the extended credit of twelve thousand dollars until such time that you see fit to ship us open account based upon our past credit performance.

"Yours very truly,
"E. T. Combs"

"August 27, 1953.

"Calcot Ltd.
  Box 3217
  Bakersfield, California

Att: Mr. Kennedy

"Dear Mr. Kennedy:

"In consideration of Mr. Combs personally guaranteeing one-third of any extension of credit on your part to Coast Cotton Mills up to twelve thousand dollars, I hereby guarantee the balance of two-thirds up to this maximum amount.

"It is hoped that with these two basic personal guarantees you would not necessarily need to limit the credit to Coast Cotton Mills to this amount, but would find it conservatively

proper to resume the prvious credit limits on a 60 day basis from date of bill of lading.

"Yours very truly,

"ADAMO Co.

"J. M. Adamo"

Cotton of the total value of $11,670.47 was thereafter shipped by plaintiff to the mills and accepted and used by the consignee. The mills did not pay anything on the account and the company is now bankrupt.

The appellant guarantors raise three points: (1) That there was a failure of consideration for the guaranty in that J. R. Kennedy, general manager of the plaintiff, notified them by letter dated September 15th to the effect that no further cotton would be sent to the mills on credit after the $12,000 total of the guaranties was exhausted; (2) That the same Kennedy letter shows that plaintiff did not rely upon the guaranties when the earliest shipments of cotton were sent to the mills; (3) That the last shipment was made by the plaintiff after the mailing of the Kennedy letter and that consequently, although the cotton was accepted and retained by the defendant mills, the guaranties did not apply. It seems to the court that in view of the record all of these points are devoid not only of merit but even of plausibility.

The Kennedy letter referred to in connection with each of appellants' contentions reads as follows:

"CALIFORNIA COTTON COOPERATIVE ASSOCIATION, LTD.

"Mr. J. M. Adamo                    September 15, 1953.
ADAMO COMPANY
1140 East Eleventh Street
Los Angeles 21, California

"Dear Mr. Adamo:

"Sometime ago, our Mr. Akers asked me to review our credit policy with the Coast Cotton Mills, Orange, California. At that time I told Mr. Akers to inform the Coast Cotton Mills, that we would extend credit up to $12,000.00 if you gave us your personal written guarantee.

"In answer to this request we received a letter from Mr. Combs dated August 26th and a letter from yourself, dated August 27th, personally guaranteeing the credit of Coast Cotton Mills, one-third and two-thirds respectively, up to the amount of $12,000.00.

"We have recently reviewed the various sales made to you

from July 28th to September 1st. All the sales confirmations on these three sales, covering 100 bales, read 'Reimbursement to be Cash Against Documents?', and I was not aware that you considered the agreement on the extension of the $12,000.00 line of credit to be in effect at this time.

"As you probably know, the cotton business is operated on a traditional small margin and has always been strictly cash. Since we have never advanced credit to our regular customers, and after due consideration of all factors involved, we have decided not to deviate from this practice. In line with this policy, all further sales of cotton to Coast Cotton Mills must be Cash Against Shipping Documents.

"We would like very much to continue furnishing cotton to the Coast Cotton Mills, as we certainly realize its importance and significance in the economy of California. We do believe, however, that for the best interest of all, we should stick to the customs and practices of the cotton trade in our dealings. I hope you accept this letter in the spirit in which it is written, as we have a great deal of interest in the continued success of the Coast Cotton Mills.

"Very truly yours,
"CALCOT, LTD.
/s/ J. R. Kennedy
"General Manager

"CC: Mr. E. T. Combs
Orange, California."

The contention that there was a failure of consideration is based on plaintiff's refusal, communicated through the Kennedy letter, to continue to ship additional cotton or extend further credit to the mills after the indebtedness should reach the $12,000 limit of the guaranties. The trial court had substantial evidence before it in the testimony of Mr. Akers and the form of the letters of guaranty sued on to warrant its conclusion that there was no accompanying agreement to give a 60-day credit to the mills or a credit for any other length of time. The guaranties of appellants not only contain no condition as to the length of time, as distinguished from the amount, for which credit would be extended, but they show on their face that no such agreement existed. In each of their letters of guaranty, Adamo and Combs express the hope that the plaintiff will be lenient enough to extend additional favorable credit terms. These expressions demonstrate

that the parties knew at the time the guaranties first became effective that no such additional terms existed. It is wholly unreasonable, in view of the record, to contend that the plaintiff owed any obligation to ship a single pound of cotton in excess of the $12,000 limit.

Appellants' second claim, namely, that the Kennedy letter of September 15, 1953, is conclusive and binding proof that the guaranties were not relied upon by the plaintiff when the earliest shipments of cotton were made is equally fallacious.

■ It is, of course, elementary that a creditor's right to enforce a contract of guaranty must be based upon knowledge of the existence of the guaranty and that the credit must be extended in reliance thereof (24 Am.Jur., pp. 884-885), but appellants fail to give due weight to the evidence of the witness Akers, who was the employee of the plantiff in immediate charge of shipments, that the cotton was delivered to the mills only because the guaranties had been made. Thus, entirely apart from the meaning and effect of the Kennedy letter, the trial court had ample and substantial evidence upon which to base the findings and judgment.

Finally, it is claimed that the last consignment of cotton, ordered before the Kennedy letter but not actually shipped until afterward, does not come within the guaranties by reason of that letter. However, it is clear that the Kennedy letter did not purport to cancel the guaranties but merely notified Mr. Adamo that future sales must be on a cash basis. . Neither of the guarantors even attempted to cancel their guaranties before the last shipment. On the contrary, the cotton was accepted and used by the mills, inferentially with the knowledge and approval of appellants, and the present claim that the guaranties did not apply to it is without any semblance of virtue.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 23, 1956.