BANK OF NEW YORK, Respondent, v HENRY A. BERSANI, Appellant.

Fourth Department, December 17, 1982

APPEARANCES OF COUNSEL

*Coulter, Fraser, Ames, Bolton, Bird & Ventre (Henry S. Fraser* of counsel), for appellant.

*Costello, Cooney & Fearon (Bruce B. Roswig* of counsel), for respondent.

OPINION OF THE COURT

CALLAHAN, J.

The issue presented for resolution, not heretofore considered in New York, is the question of when a cause of action accrues for Statute of Limitations purposes against an indorser and guarantor for another of payment on a demand promissory note under the Uniform Commercial Code.

This question arose out of a loan made by plaintiff's predecessor bank, Metropolitan National Bank of Syracuse, to the Onondaga County Democratic Committee (Committee). The indebtedness was evidenced by three promissory notes, each dated May 3, 1967 and payable "On demand after date". The notes were each signed by the Committee treasurer. Each note was signed on the back by several other individuals, including defendant-appellant, Henry A. Bersani (Bersani), who indorsed the notes and

further unconditionally guaranteed payment in the event of default for a sum not to exceed $1,000 each. The Committee made some interest payments on the notes until 1977 when all payments ceased. In January, 1980 plaintiff Bank of New York (Bank) made demand on Bersani for payment. When payment was not made, the Bank brought this action upon the notes in July, 1981. Bersani, in his answer, asserted that all three causes of action alleged in the complaint were time barred because the actions were commenced more than six years after May 3, 1967, the date of the notes. The Bank brought a motion for summary judgment which was granted by Special Term and Bersani appeals.

On this appeal, the respective parties hereto each rely upon the provisions of the Uniform Commercial Code to support their conflicting positions. Bersani contends that under the provisions of the code, his liability as an indorser who guarantees payment is "indistinguishable from that of a co-maker". Since a cause of action against a maker of a demand instrument accrues under the code upon the date of the instrument (Uniform Commercial Code, § 3-122, subd [1], par [b]), which in this case is May 3, 1967, he contends that the causes of action against him accrued on that date and were barred by the six-year Statute of Limitations. On the other hand, plaintiff Bank, relying on other provisions of the code, contends that Bersani was an indorser whose liability accrued on demand (Uniform Commercial Code, § 3-122, subd [3]) and therefore since demand was not made until 1980, the action was timely commenced.

The obligation which a party assumes upon indorsing a note is, among other things, to pay it, in case the one primarily responsible thereon, neglects or refuses to do so. Ordinarily, under the code, a cause of action against an indorser accrues only upon demand after the instrument has been presented and dishonored (Uniform Commercial Code, § 3-122, subd [3]). Prior to the adoption of the code, it was held generally that no right of action accrued against a simple indorser of a demand note until demand for payment was made, so that the Statute of Limitations began to run, as to him, from the date of the actual demand (*Shutts v*

*Fingar,* 100 NY 539). Where, however, in a promissory note, the indorser waived demand, notice of payment and protest, his liability was similar to that of the maker, and the statute commenced to run from the date of the note or its delivery, and actual demand was unnecessary (*Peoples Trust Co. of Malone v O'Neil,* 273 NY 312).

The code does not expressly state when a cause of action accrues against a guarantor but the terms of the note and the function of the guarantor provide the rationale for such determination. Defendant Bersani, in indorsing each subject note, unconditionally guaranteed payment to the Bank to the extent of $1,000 pursuant to the following terms: "For value received, each of the undersigned hereby indorses the within note and further, unconditionally guarantees to the holder hereof to the extent of $1,000.00, regardless of the genuineness, validity, regularity or enforceability of the within note * * * that the within note will be promptly paid in full when due, in accordance with the provisions thereof, by acceleration or otherwise; hereby consents that the holder hereof may at any time or times and without notice to the undersigned, renew, extend, modify or accelerate pursuant to any agreement with any maker hereof, the maturity or time of payment hereof in whole or in part, and further consents that periodically, without notice to the undersigned and without affecting any liability of the undersigned, any collateral for payment of such indebtedness may be exchanged, released, surrendered, sold (whether on foreclosure or otherwise) applied or otherwise dealt with by and at the election of any holder hereof. Each of the undersigned waives presentment, notice of dishonor and protest. This guaranty shall be deemed to have been dated as of the date when the within note shall have been acquired by the Bank named therein. It is intended that this endorsement shall obligate each endorser respectively in the event of default to the holder of the note".

In holding the action to be timely, Special Term relied on the rule that a cause of action against an indorser accrues upon demand following dishonor (Uniform Commercial Code, § 3-122, subd [3]). Reasoning that the instrument unambiguously described Bersani as both an indorser and

a guarantor, and that the parol evidence rule prohibits any assertion on his part that he was not an indorser but only a guarantor, Special Term held the statute did not begin to run against Bersani as guarantor until demand was made for payment in 1980.

"Indorser" and "guarantor", the two express roles which Bersani assumed, are not defined in the code. However, Bersani would come within the code definitions of a surety and a secondary party. Surety includes guarantor pursuant to subdivision (40) of section 1-201 of the Uniform Commercial Code and secondary party means a drawer or indorser (Uniform Commercial Code, § 3-102, subd [1], par [d]).

Pursuant to subdivision (3) of section 3-122 of the Uniform Commercial Code, a cause of action against an indorser of an instrument accrues upon demand following dishonor of the instrument, and notice of dishonor is a demand. Under this section, a cause of action may accrue against a secondary party at a later date than against the primary obligor so that the Statute of Limitations can expire at different dates on the same instrument. The action against a maker, the primary obligor, may be brought on a demand note immediately upon issue, without demand, since presentment is not required to charge the maker (Uniform Commercial Code, § 3-122, subd [1], par [b]). However, as to indorsers, the cause of action accrues, in conformity with their underlying contract on the instrument (Uniform Commercial Code, §§ 3-413, 3-414), only upon demand made, typically in the form of notice of dishonor after the instrument has been presented to and dishonored by the person designated on the instrument to pay it. This provision would appear to support Special Term's finding on behalf of the Bank, particularly when no reference is made to the terms of the underlying contract.

Bersani's underlying contract on the instruments, however, states that "[e]ach of the undersigned waives presentment, notice of dishonor and protest", and "[i]t is further agreed that this note and all other obligations, direct or contingent, of any maker or indorser hereof to the holder hereof shall become immediately due and payable without

notice or demand, upon the happening of any one of the following specified events with respect to any maker, indorser or guarantor hereof * * * default in payment or performance of this note or any other obligation". Thus, "notice of dishonor" which is a typical demand form and "demand" in the event of a default have been waived. Nonetheless, the Bank argues "dishonor" required by section 3-122 of the code for accrual of a cause of action did not occur until interest payments stopped in 1977 and the required "demand" did not occur till its 1980 letter to Bersani. Further, the Bank contends that words of assignment, condition, waiver, guarantee, limitation or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement (Uniform Commercial Code, § 3-202). Thus, the Bank asserts that Bersani's obligation is controlled by its character as an indorsement, no matter what else it may be.

The code contemplates two kinds of guarantors: a guarantor of payment (Uniform Commercial Code, § 3-416, subd [1]) and a guarantor of collectability (Uniform Commercial Code, § 3-416, subd [2]). Thus, the words of guarantee in Bersani's contract are significant to his liability. Clearly, from the terms above Bersani's signature, he has guaranteed payment (as opposed to guaranteeing collection after the holder has reduced his claim to judgment against the maker, or the maker is otherwise obviously unable to pay). An indorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee (Uniform Commercial Code, § 3-416). Words of guarantee do not affect the character of the indorsement as an indorsement (Uniform Commercial Code, § 3-202, subd [4]); but the liability of the indorser becomes "indistinguishable from that of a comaker" (see Uniform Commercial Code, § 3-416, Comment).

Since an indorser's enjoyment of condition precedent to liability (presentment, dishonor, and notice of dishonor) is what distinguishes him from a maker, when these conditions are waived, the difference between them disappears and the indorser becomes primarily liable under the provisions of section 3-416 of the Uniform Commercial Code.

This section, however, continues to characterize one who guarantees payment as an indorser, even while recognizing that his liability is "indistinguishable from that of a co-maker". It does so to resolve a problem of negotiation, as opposed to one of liability (see Hawkland, Commercial Paper [2d ed, 1979], p 50). The liability of this indorser, however, is primary in nature (Uniform Commercial Code, § 3-416). The draftsmen of the Uniform Commercial Code characterized anyone who signed on the back of a negotiable instrument and accompanied it with words of guarantee as an indorser (Uniform Commercial Code, § 3-202, subd 4) to resolve problems of negotiation, presented under the holdings of some other cases decided prior to the adoption of the Uniform Commercial Code, and to assure that transfers of such a person would be holders in due course (see Hawkland, Commercial Paper [2d ed, 1979], p 50).

Accordingly, we hold that this primary liability of the indorser who guarantees payment makes the cause of action against the indorser, like that of the maker, accrue for Statute of Limitations purposes on the date of the promissory demand note.

This conclusion has been reached as well by other jurisdictions which have considered the problem and have uniformly held that the maker's accrual date applies to a third-party guarantor of payment (see, e.g., *Ligran, Inc. v Medlawtel, Inc.,* 174 NJ Super 597, revd on other grounds 86 NJ 583; *Cantor v Newton,* 4 Mass App 686; *Rice v Travelers Express Co.,* 407 SW2d 534 [Tex Civ App]; see, also, *American Trading Co. v Fish,* 42 NY2d 20).

Accordingly the order and judgment should be reversed and summary judgment should be granted in favor of defendant dismissing the complaint.

DILLON, P. J., DENMAN, BOOMER and SCHNEPP, JJ., concur.

Order and judgment unanimously reversed, on the law, with costs, and summary judgment granted to defendant dismissing complaint.