FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,

v.

Maria SCHUHMACHER, Defendant.

No. 80 CV 414 (ERN).

United States District Court, E.D. New York.

Dec. 7, 1984.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff by Phillip A. Geraci.

Joseph W. Ryan, Jr., Mineola, N.Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This case is before the Court upon cross-motions for summary judgment. The motions concern the liability of defendant as an asserted guarantor for the balance plus interest of a demand promissory note which plaintiff obtained as the receiver of the insolvent Franklin National Bank (FNB).

The following facts are not in dispute. Defendant and her husband, Willy Schuhmacher, were employees of H & S Restaurants, Inc. (H & S), a catering enterprise located in Nassau County. Their boss was Carl Hoppl. On November 28, 1972, defendant and her husband executed and delivered a guarantee to FNB. In paragraph 1 they absolutely guaranteed the obligations of H & S to the bank, "whether now existing or hereafter incurred." Exh. A to Affidavit of Simon Levy, Liquidation Assistant for FDIC. On April 8, 1974, Carl Hoppl, as president of H & S, signed a secured promissory note for $195,000. FNB held the note until October 8, 1974, when the Comptroller of the Currency declared the bank insolvent and appointed plaintiff as receiver. As receiver, plaintiff transferred the note and the guarantee to itself in its corporate capacity.

Plaintiff commenced this action on February 25, 1980, against defendant and her husband. Subsequently, Willy obtained a discharge of his liability on the guarantee in bankruptcy and was dismissed from the suit.

Because defendant's motion for summary judgment relies entirely upon the affirmative defenses of the statute of limitations and laches, the Court will turn first to plaintiff's motion, which addresses the merits of its prima facie case to establish defendant's liability on the guarantee. Essentially, to establish liability, plaintiff relies upon the language of the guarantee and the documentary evidence of the April 4, 1974 loan.

> "[W]here the language of a guaranty is unambiguous, no need exists to resort to other means of interpretation, and effect must be given to the parties' intent as indicated by the language itself. *E.g., Western Union Tel. Co. v. American Communications Assoc.,* 299 N.Y. 177, 86 N.E.2d 162 (1949). The meaning to be given such an instrument is an issue of law, for the court's determination. *Salzman v. Bowyer Productions, Inc.,* 42 A.D.2d 531, 344 N.Y.S.2d 755 (1st Dept.1973)."

*Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109, 1113 (S.D.N.Y.1979).

Defendant responds that a document obtained from plaintiff suggests that FNB may not have relied upon her guarantee when it loaned money to H & S on April 8, 1974. Assertedly, this document creates an issue of fact concerning FNB's reliance on the guarantee. Premised on this document, defendant requests further discovery of FNB's records concerning the exact circumstances of the April 8, 1974 transaction. Significantly, Carl Hoppl, a principal to the transaction, is deceased;

however, there is nothing in the parties' papers concerning the identity or availability of an individual(s) from FNB who handled the transaction for the bank.

■ Defendant's contention stems from a document entitled: "Description of 'Additional Assets' rejected by *European-American Bank & Trust Company* (Assuming Bank): Right, Title and Interest in which Remain with FDIC, Receiver of Franklin National Bank." Exh. A to Ryan Affidavit. It lists the note of April 8, 1974, and describes the same collateral which appear on the face of the note. It also contains the following:

"Endorser(s) or Guarantor(s) <u>None</u>."

In response, Levy, Reply Affidavit ¶ 6, states that someone has told him that this form was prepared by European-American Bank. "It was not intended to be—and is not—a binding or conclusive description of the obligations of H & S Restaurants, Inc. and of any underlying guarantees." *Id.* Levy attributes the absence of the guarantee from this form to oversight arising from the time constraints of the FNB insolvency. Within 180 days European-American had to accept or reject thousands of FNB's loans.

"It is, of course, elementary that a creditor's right to enforce a contract of guaranty must be based upon knowledge of the existence of the guaranty and that the credit must be extended in reliance thereof, 24 Am.Jur., pp. 884–885, * * *"

*Calcot Association Ltd. v. Coast Cotton Mills,* 140 Cal.App.2d 268, 295 P.2d 1, 4 (1956). This rule applies to a "general" guarantee, *J.C. Wattenbarger & Sons v. Sanders,* 216 Cal.App.2d 495, 30 Cal.Rptr. 910, 915 (1963); *Joe Balestrieri & Co. v. Commissioner of Internal Revenue,* 177 F.2d 867, 873 (9th Cir.1949); *Farmers State Bank of York v. Brock,* 120 Neb. 551, 234 N.W. 92, 94 (1931), which

"... is one for acceptance by the public generally, and is so written that any one to whom it is presented may advance money or incur liability on complying with its terms, and, having done so, may hold the guarantee responsible thereon; it is a general promise to anyone accept-

ing it to be answerable for a debt or duty in case of the failure or default of another person, who is liable in the first instance. A special guaranty, on the other hand, is one which is addressed to a particular person who alone can take advantage of it, and to whom alone the guarantor can be held responsible; it usually, but not necessarily, contemplates a trust or reposes a confidence in the person to whom it is addressed." 38 C.J.S. *Guaranty* § 7 (1943) (footnotes to citations omitted); *accord* 38 Am.Jur.2d *Guaranty* § 20 (1968). Because it named the obligee, the document defendant executed was a "special" guarantee, upon which only the named obligee, FNB, could rely.

■ The guarantee was also "continuing." The parties' language contemplated future transactions and with respect to those transactions, the language constituted an offer which FNB accepted upon making a loan or loans to H & S. *See Meadow Brook National Bank v. Feraca,* 33 Misc.2d 616, 224 N.Y.S.2d 846, 850 (Sup.Ct. Nassau Co.1962); *Eastern Capital Corp. v. Freeman,* 10 Misc.2d 412, 168 N.Y.S.2d 834, 837 (Sup.Ct.N.Y.Co.1957); *Security State Bank v. Gray,* 224 Mo.App. 980, 25 S.W.2d 512, 515 (1929); *see also Moody v. Kirkpatrick,* 234 F.Supp. 537, 540 (M.D. Tenn.1964) (Tenn. law). No other act was required to form a binding contract. *See Union Bank v. Coster's Executors,* 3 N.Y. 203, 212–13 (1850).

■ As an officer of H & S, defendant should have known or been aware of H & S's obligations. *See First Nat. Bank, etc. v. Citizens and Southern Bank, etc.,* 651 F.2d 696, 699 (10th Cir.1981) (Okla. law). She agrees that she did not withdraw the guarantee as permitted by its provisions, and she has presented nothing to demonstrate that FNB had agreed that the April 8, 1974 note was not covered by the guarantee. *See Bank of America, etc. v. Waters,* 209 Cal.App.2d 635, 26 Cal.Rptr. 9 (1962). She also may not offer parol evidence to vary or otherwise depart from the guarantee's unambiguous terms. *See, e.g., Chemical Bank v. Sepler,* 60 N.Y.2d 289,

293, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983); *Nanuet National Bank v. Rom*, 96 A.D.2d 898, 466 N.Y.S.2d 68, 69 (2d Dept. 1983) (memorandum); *Bankers Trust, etc. v. Walker*, 49 A.D.2d 670, 371 N.Y.S.2d 198, 199–200 (4th Dept.1975).

In this context, therefore, to avoid summary judgment, defendant must produce or seek to discover evidence of an agreement by which FNB removed the April 8, 1974 note from the ambit of the guarantee. Such an agreement would avoid the effect of the parol evidence rule which does not prevent a party from demonstrating that an otherwise unambiguous written contract has been modified by a subsequent writing. *See Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343–44, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977) (discussion therein). The Court comprehends defendant's argument to include a plea for just such discovery from the files and records of FNB. This request is based upon the aforementioned document, possibly prepared by European-American Bank, which shows no guarantors of the April 8, 1974 note. This document raises the possibility that the April 8, 1974 note was excluded from the guarantee. In determining a motion for summary judgment, the Court may not foreclose a defendant's attempt to investigate a defense or theory of nonliability. *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 11 (2d Cir.1983). Accordingly, plaintiff's motion for summary judgment is denied.[1]

In support of her motion for summary judgment, defendant contends that plaintiff's claim is barred by the six-year statute of limitations of N.Y.C.P.L.R. § 213(2). Defendant was served with the summons in Florida on July 22, 1983. She asserts that paragraph 9 of the guarantee, by which she waived notice of default, placed her in the same position as the maker of the note or an endorser who guarantees payment. Relying on *Bank of New York v. Bersani*, 90 A.D.2d 302, 457 N.Y. S.2d 142 (4th Dept.1982), she concludes that plaintiff's claim accrued on November 28, 1972, the date of the execution of the guarantee, and, therefore, is time barred. In *Bersani*, the Court stated:

"Accordingly, we hold that this primary liability of the endorser who guarantees payment makes the cause of action against the endorser, like that of the maker accrue for statute of limitations purposes on the date of the promissory demand note.

"This conclusion has been reached as well by other jurisdictions which have considered the problem and have uniformly held that the maker's accrual date applies to a third party guarantor of payment."

457 N.Y.S.2d at 145 (citations omitted). Under *Bersani*, FNB's cause of action against defendant accrued on the date of the demand note, April 8, 1974.[2] *Chemical Bank, etc. v. Amory*, 27 A.D.2d 730, 277 N.Y.S.2d 459, 460 (1st Dept.1967) (*per curiam*), *aff'd*, 21 N.Y.2d 832, 288 N.Y.S.2d 916, 235 N.E.2d 918 (1968).

Defendant's contention continues in the alternative. Accepting April 8, 1974 as the accrual date, she relies on N.Y.C.P.L.R. § 203(b) (statute of limitations is tolled upon service of the summons) to argue that the action is not timely because she was served more than six years after the accrual date. *See generally Phoenix Mutual*

---

1. The Court has not overlooked documents furnished by plaintiff as Exhibit B to Levy's reply affidavit. The quality of the photocopying is poor; however, the papers obviously relate to H & S's business dealings with FNB. Assuming *arguendo*, that they evidence a set of "rollover" transactions which connect the November 1972 guarantee to the April 8, 1974 note, they do not conclusively establish the absence of an agreement by which FNB removed the note from the coverage of the guarantee. They merely permit an inference that no such agreement exists. This inference does not foreclose discovery or a trial.

2. This result also follows from the discussion, *supra,* concerning the legal effect of a continuing guarantee. The contract of guarantee arose when FNB made the April 8, 1974 loan to H & S. Adoption of defendant's accrual date would lead to an incongruous result. In effect, according to defendant, FNB was able to sue on the guarantee on November 28, 1972, some 17 months before the contract, which supplied the basis for the suit, was formed.

*Ins. Co. v. Cervera,* 524 F.Supp. 70, 72 (E.D.N.Y.1981).

■ Plaintiff responds with two theories by which the statute of limitations was tolled and a contention that defendant's argument is flawed from its inception. The Court agrees with plaintiff's argument that the statute of limitations was tolled up until at least February 1979. Paragraph 16 of the guarantee provides:

> "Any acknowledgment, new promises, payment of principal or interest or otherwise by Borrower or others, with respect to the liabilities of Borrower, shall be deemed to be made as agent of the Guarantor for the purposes hereof, and shall, if the statute of limitations in favor of the Guarantor against the Bank shall have commenced to run, toll the running of such statute of limitations, and if such statute of limitations shall have expired, prevent the operation of such statute."

Letters attached as exhibits G and H to Levy's affidavit document plaintiff's collection efforts from Carl Hoppl, including the assignment of the proceeds from Hoppl's life insurance policies, which proceeds became available when he died in February 1979. These payments and reductions of the principal due on the note by selling the note's collateral tolled the statute of limitations. *See P.H. Carlyon Inc. v. Roberts,* 188 Misc. 569, 64 N.Y.S.2d 792, 793 (Chautauqua Co.Ct.1946), *aff'd,* 271 A.D. 1060, 70 N.Y.S.2d 133 (4th Dept.1947) (memorandum) (cases and authorities cited therein); *cf. Chemical Bank, etc. v. Amory, supra,* 277 N.Y.S.2d at 561. As a result, service of process on defendant in July 1983 was timely under the law of New York.[3]

■ Defendant also asserts a defense of laches.

> "The answer short and simple is that laches is a defense only to actions in equity, and is not a defense to an action

in law. The relevant statute of limitations provides the only barrier to stale actions of law. Reviewing the complaint, it is apparent that this is an action for breach of contract and that no equitable relief is sought. Accordingly, this defense is not available to defendant."

*M. Lowenstein & Sons, Inc. v. Austin,* 430 F.Supp. 844, 846 (S.D.N.Y.1977) (citations omitted) (action on a guaranty).

Accordingly, on the basis of the foregoing, both parties' motions for summary judgment are denied.

SO ORDERED.

Copies of this Memorandum of Decision and Order are being forwarded to counsel for the parties.

---

3. Defendant's contention concerning the statute of limitations is meritless, and therefore, the Court need not consider plaintiff's contention that the appropriate statute of limitations is governed by federal law, specifically 12 U.S.C. § 1819 and 28 U.S.C. § 2415(a). Under plaintiff's argument, a six-year statute of limitations would have run from an accrual date of April 8,

1974 and would have been tolled, pursuant to Fed.R.Civ.P. 3, when plaintiff filed its complaint on February 25, 1980. Nothing herein should be considered a ruling upon the applicability to this case of New York law as opposed to federal law. Very simply, if the New York law of limitations applies, as asserted by defendant, plaintiff's claim is not time barred.