**DEERFIELD SPECIALTY PAPERS, INC., Plaintiff,**

v.

**BLACK CLAWSON COMPANY, INC., Defendant.**

**No. 87 Civ. 1522 (KTD).**

United States District Court, S.D. New York.

Oct. 9, 1990.

Meister Leventhal & Slade, New York City (Jeffrey C. Slade, of counsel), for plaintiff.

Wachtell Manheim & Grouf, New York City (Robert Braunschweig, of counsel), for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Deerfield Specialty Papers, Inc. ("Deerfield Specialty") moves pursuant to Fed.R.Civ.P. 56 for summary judgment as to defendant Black Clawson Company, Inc.'s ("Black Clawson") counterclaim, and moves separately, *in limine*, seeking a ruling as to the applicability of the parol evidence rule relative to a contract entered between the parties. Black Clawson moves for sanctions pursuant to Fed.R.Civ.P. 11.

This case was initially assigned to the Honorable John M. Walker, and by his Order, dated September 30, 1988, the above motions were referred to Magistrate Joel J. Tyler to Report and Recommend. This case was reassigned to me when Judge Walker was appointed to the Second Circuit. By Order, dated January 3, 1990, I directed that Magistrate Tyler continue with the reference. On January 24, 1990, Magistrate Tyler filed a Report and Recommendation (the "Report"), concluding that Deerfield Specialty's motion for summary

judgment on the counterclaim should be granted, Black Clawson's motion for sanctions denied, and that no order should issue precluding the introduction of parol evidence with regard to the disputed contract. Both parties timely objected to portions of Magistrate Tyler's Report.[1] Accordingly, pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1),[2] I have undertaken a *de novo* review of the issues and the Magistrates recommendations. Based on that review, and for the reasons stated below, I adopt the recommendation of the Magistrate as to the denial of sanctions and the admission of parol evidence with regard to the contract. However, I conclude that the motion for summary judgment on the counterclaim should also be denied.

## FACTS

Deerfield Paper Company ("Deerfield Paper") is a wholly-owned subsidiary of O.P.C. Corporation ("OPC"). By agreement entered into on February 14, 1984, and later amended on June 6, 1984, Deerfield Paper obligated itself to purchase from Reed Holdings, Inc. ("Reed") all the capital stock of Deerfield Specialty. By early 1984, partial financing of the acquisition of stock allegedly had been arranged by Richard Osborne, a shareholder of OPC, whereby Black Clawson agreed to loan OPC $600,000. On June 5, 1984, Black Clawson transferred the money to OPC. Between June 14 and June 25, 1984, Deerfield Specialty transferred $600,000 to Black Clawson's account.

Meanwhile, in May 1984, Deerfield Specialty entered into a contract (the "May 1984 contract") with Black Clawson Enterprises, Inc. ("Enterprises") under which Enterprises would dismantle for Deerfield

1. Although Rule 7 of the Rules for Proceeding Before Magistrates of this court states that the parties must file any written objections to the court within ten days of the issuance of the Magistrate's Report and Recommendation, I granted the parties additional time to file their objections.

2. To accept a Report and Recommendation of a magistrate to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record. Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules. Pursuant to 28 U.S.C. § 636(b)(1), the district court is afforded broad

latitude in considering a magistrate's recommendation, even if no party objects to it. *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). However, when timely objection has been made to a portion or portions of a magistrate's report, as here, the district judge must "make a de novo determination ... of any portion of the magistrate's disposition to which specific written objection has been made." Fed.R.Civ.P. 72(b). The district judge may then accept, reject, or modify, in whole or part, the magistrate's proposed findings and recommendations. 28 U.S.C. § 636(b)(1).

Specialty a used "dryer section" of one of its paper machines and reinstate it at Deerfield Specialty's Georgia plant, at a cost of $1.5 million. *See* Plaintiff's 3(g) statement, Exh. F. The May 1984 contract set forth a schedule of payments, which, in part, required Deerfield Specialty to pay Enterprises $200,000 on June 13, 1984, and $400,000 on June 25, 1984. Deerfield Specialty made payments amounting to $600,000 to the account of Enterprises during June 1984. A contract was also entered into on or about May 1985 between Black Clawson Industries ("Industries"), the successor corporation to Enterprises,[3] and Deerfield Specialty, pursuant to which Industries was to supply Deerfield Specialty's Georgia plant with two electric drives for a cost of $125,000. Plaintiff's 3(g) Statement, Exh. I.

In July 1984, the May 1984 contract between Deerfield Specialty and Enterprises was cancelled with the consent of both parties. Black Clawson did not return the $600,000 that it had received from Deerfield Specialty prior to the cancellation of the contract. Deerfield Specialty asserts that it transferred the $600,000 as partial payment under the May 1984 contract with Enterprises. Black Clawson, however, maintains that this transfer was in satisfaction of its loan in the same amount to OPC in connection with Deerfield Paper's acquisition of the stock of Deerfield Specialty. Accordingly, Black Clawson never recorded holding the $600,000 on account for Deerfield Specialty in satisfaction of the unrelated indebtedness. Deerfield Specialty, in turn, contends that Reed never consented to the arrangement whereby Deerfield Specialty should satisfy Black Clawson's debt to OPC.

Deerfield Specialty then brought this action, alleging unjust enrichment based on Black Clawson's retention of the $600,000. Black Clawson, in turn, counterclaimed for payment for work it performed in 1984 and 1985. Both parties have previously moved before Judge Walker for partial summary

judgment, which motions were denied by his Memorandum and Order, dated April 6, 1988. Deerfield Specialty now moves for summary judgment dismissing Black Clawson's counterclaim on the basis that Black Clawson is without standing to assert that counterclaim for lack of privity in that the 1984 and 1985 contracts were entered into by Enterprises, a now defunct Delaware corporation, and not by Black Clawson. Black Clawson moves for Rule 11 sanctions, contending that it is empowered as Enterprises' sole stockholder to assert the counterclaim because Enterprises has been dissolved, and, upon dissolution, it automatically became the owner of all of its assets, including its causes of action. In addition, Deerfield Specialty moves *in limine* for a ruling whether the parol evidence rule is applicable relative to the May 1984 contract.

## DISCUSSION

### A. *Black Clawson's Counterclaim*

In its counterclaim Black Clawson alleges:

> During 1984 and 1985 defendant, at the special instance and request of plaintiff, performed the following work, labor and services in connection with a project to rebuild plaintiff's plant and equipment; (a) engineering and administrative work, including but not limited to preparation of project specifications, drawings, pricing and budgeting, obtaining and reviewing sub-contractors' quotations and attending meetings with plaintiff's representatives; (b) purchasing for plaintiff's use and preparing for installation, installing equipment, specifically two (2) 400 horsepower motors and drives....

Amended Answer and Counterclaim ¶ 11.

In support of its motion for summary judgment, Deerfield Specialty argues that Black Clawson is not the proper party to assert its counterclaim because the April 1985 contract, regarding the installation of

---

**3.** On October 31, 1984, Enterprises filed a Certificate of Amendment with the Delaware Secretary of State changing its corporate name to Black Clawson, Inc. On January 11, 1985, Black Clawson, Inc., subsequently changed its name to Black Clawson Industries ("Industries"). On December 30, 1986, Industries was dissolved by the written consent of its sole shareholder, defendant Black Clawson Company, Inc.

electric drives, and the subsequently cancelled May 1984 contract, regarding the dryers, were entered into by Deerfield Specialty and Enterprises, and that Black Clawson was not a party to either contract. Deerfield Specialty further contends that the alleged cause of action, possessed by Enterprises, was not transferred to Black Clawson, its sole shareholder upon dissolution, because the plan of dissolution provided that the assets of Enterprises would be "converted into cash at public or private sale and ... distributed to the shareholder." *See* Defendant's Motion for Sanctions, Exh. 1, ¶ 5. In addition, Deerfield Specialty points out that there was apparently no express assignment of these causes of action to Black Clawson.

To the contrary, Black Clawson asserts that it is the proper party to bring the contract claim based on the May 1985 contract, concerning installation of certain electric drives because it is the successor corporation to Enterprises and Industries. Moreover, Black Clawson now seeks to be paid on a quantum meruit basis for work that it—and not Enterprises—performed for Deerfield Specialty with regard to the acquisition and renovation of the dryers. Thus, Black Clawson claims a right to bring this action in its own behalf. Specifically, Black Clawson alleges that the counterclaim with regard to the dryers was not done as part of the May 1984 contract for $1.5 million, but was done on the basis of an oral agreement between R. Carl Chandler, Chairman of Deerfield Specialty at the time, and L.B. Owen, a Black Clawson employee. The alleged oral contract purports that Deerfield Specialty "would make good any expenditures by [Black Clawson] or Enterprises on behalf of Deerfield Specialty in connection with readying the dryers for installation." Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on the Counterclaim at 3. Finally, Black Clawson asserts that there is at least a triable issue of fact whether claims of Enterprises were transferred from Enterprises to Black Clawson at the time of dissolution.[4]

The capacity of a corporation to sue and be sued is governed by the laws of the state where it was organized. Fed.R.Civ.P. 17(b). Delaware law therefore governs the issue whether Black Clawson has standing to raise the counterclaim because Enterprises was a Delaware corporation. Under common law, all rights of a corporation expire upon its dissolution. *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927). However, Delaware, and apparently all other states, have statutorily permitted an extended period post-dissolution for the corporation to wind up its business affairs. During that period, it may sue or be sued on claims connected with the dissolution. Delaware corporation law specifically grants a dissolved corporation an extended period of three years during which it may prosecute or defend suits for the purpose of completing any unfinished business. In addition, a corporation in the aftermath of dissolution may close out its business by disposing of property, discharging liabilities and "distribut[ing] to [ ] stockholders any remaining assets...." Del.Code Ann. Tit. 8 § 278 (1974).

Here, Magistrate Tyler found that the causes of action supposedly arising under the May 1984 and April 1985 contracts:

continued as the property of Enterprises for three years, or any legal extension thereof, after its dissolution; however, they were not assets which passed to Black Clawson, by operation of law, merely by virtue of the dissolution. If Enterprises never disposed of these claims during the permitted period after dissolution, the claims are lost, lest a derivative action is commenced by Black Clawson within the limitation period stat-

---

**4.** Specifically, Enterprises was a wholly-owned subsidiary of Black Clawson. Harris Affid. ¶ 2. Upon Enterprises' dissolution, its business was transferred by Black Clawson to its Paper Machine Division and was continued by Black Clawson. In January 1987, all of the assets of Enterprises were transferred on the books of Black Clawson. Harris Affid. ¶ 6 and Exh. A. The closing balance sheet for Enterprises records the transfer on the books of Black Clawson of all of the accounts of Enterprises to Black Clawson, purportedly including amounts receivable from Deerfield Specialty. *See* Harris Affid. Exh. A.

utorily prescribed by Delaware for such actions.

Report at 14.

█ It is unclear under Delaware law whether Black Clawson is excluded in these circumstances from maintaining its counterclaim with regard to the May 1984 contract. There appears to be scant authority to support the proposition that a shareholder of a dissolved corporation can bring a contract action in its own name, and not derivatively, either during or after the winding-up period. The briefs submitted on behalf of both parties, particularly Black Clawson's, not only obfuscate the facts but also rely on inapposite case law.[5] In reviewing Delaware law, I found that actions by or against a corporation after dissolution should be brought in the name of the corporation. However, in light of the condition of the record before me, there well may be genuine issues of material facts existing as to the purported oral contract with regard to the dryers and the alleged assignment to Black Clawson of Enterprises' causes of action. Deerfield Specialty's motion for summary judgment dismissing the counterclaim must therefore be denied.

## B. *Parol Evidence Rule*

The May 1984 contract provided that a sum certain be paid in consideration for labor and materials. That agreement made no mention of the disposition of any prior payments by Deerfield Specialty upon cancellation of the contract, and it did not provide that upon cancellation Black Clawson could allocate prior payments to the repayment of a loan to a third party. Deerfield Specialty now seeks an *in limine* ruling that the introduction of certain evidence by Black Clawson with regard to the May 1984 contract is barred by the parol evidence rule. In the absence of such a ruling, Black Clawson will seek to introduce evidence at trial which would tend to show that the parties had orally agreed prior to the signing of the May 1984 con-

tract that, upon the contract's cancellation, Black Clawson could apply the $600,000 paid by Deerfield Specialty against the debt of OPC. Deerfield Specialty contends that such evidence is barred by the parol evidence rule for its use here would tend to modify or contradict the unambiguous terms of the May 1984 contract.

█ It is axiomatic common law that parol evidence is barred which would tend to vary or contradict an integrated written agreement assented to by all of the contracting parties. "[W]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise will not be admitted for the purpose of varying or contradicting the writing." 3 *Corbin on Contracts* § 573 (1963); *see Ohanian v. Avis Rent a Car System Inc.,* 779 F.2d 101, 108 (2d Cir.1985) (" 'where parties have reduced their bargain, or any element of it, to writing, the parol evidence rule applies to prevent its variance by parol evidence' ") (quoting *Laskey v. Rubel Corp.,* 303 N.Y. 69, 100 N.E.2d 140 (1951)). The rule is inapplicable to negotiations or agreements entered into after the contract has been recommended. *Federal Deposit Ins. Corp. v. Schuhmacher,* 660 F.Supp. 6, 9 (E.D.N.Y.1984).

█ Deerfield Specialty argues that the May 1984 contract provided that the $3.5 million purchase price was to be paid only for materials and services that Black Clawson was to provide Deerfield Specialty, and does not provide for Black Clawson's use of that money against other debts. Deerfield Specialty further points to Addendum "C" to the May 1984 contract, which granted Deerfield Specialty the "absolute right" to cancel the contract "without any liability or obligation whatsoever on the part of" Deerfield Specialty if it gave written notice to Black Clawson any time on or before June 12, 1984. *See* Deerfield Specialty's Objections to Magistrate's Report and Recommendation, Exh.

---

**5.** Surprisingly, the parties' briefs submitted to the Magistrate on the summary judgment issue include not one citation to case law.

A. However, some uncertainty arises from the fact that neither Addendum "C" nor the documents cancelling the contract mention the disposition upon cancellation of the $600,000 already paid by Deerfield Specialty. If a contract is found to be incomplete or ambiguous, extrinsic evidence may be used not to vary the language, but to resolve the ambiguity. *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 435 N.E.2d 1075, 450 N.Y.S.2d 460 (1982). For the reasons stated by the Magistrate, I concur with his finding that parol evidence is admissible here.

Having reviewed both Magistrate Tyler's Report and the parties' objections, I concur with the Magistrate's recommendation that parol evidence will be admissible with regard to agreements or negotiations concerning what was to be done, upon cancellation, with the $600,000 paid pursuant to the May 1984 contract. Furthermore, Black Clawson's motion for sanctions is denied. However, Deerfield Specialty's motion to dismiss Black Clawson's counterclaim is denied.

SO ORDERED.