**MERCANTILE TRUST COMPANY, National Association, Respondent,**

v.

**H.M. CARP, Emile S. Carp and Elaine D. Carp, Appellants.**

Nos. 43976–43979.

Missouri Court of Appeals, Eastern District, Division Four.

March 22, 1983.

London, Greenberg & Fleming by Burton M. Greenberg, St. Louis, for appellants.

Thompson & Mitchell by William R. Bay, St. Louis, for respondent.

SATZ, Acting Presiding Judge.

Defendants, Herbert Carp, Emile Carp and Elaine Carp, appeal from a summary judgment entered against them, jointly and severally, and in favor of plaintiff, Mercantile Trust Company National Association (Mercantile), in the amount of $1,026,652.39 plus interest. We affirm.

Mercantile as the holder-payee of promissory notes sued defendants as guarantors of those notes. Mercantile moved for summary judgment on a record which included requests for admissions, interrogatories, depositions and affidavits. Each defendant filed a counter-affidavit.

The record reveals that Elaine Carp is the wife of Herbert Carp. Herbert was em-

ployed by a corporation named Carp's, Inc. in 1942 as assistant store manager. Emile began with the corporation in 1948 as a shoe buyer. By 1951, Herbert was a director of Carp's, Inc. In 1953, Emile became assistant treasurer of the company, while Herbert became vice-president. In 1957, Emile became a director and, in 1963, also began serving as executive vice-president. Herbert became president in 1963, and continued in that position until 1973. From the record, it appears that Carp's, Inc. is no longer in existence.

In 1953, the board of directors of Carp's, Inc. passed a resolution permitting any two designated corporate officers to borrow money or obtain credit on behalf of the corporation from Mercantile in such sums and upon such terms as the officers, in their discretion, deemed desirable. In their answer to Mercantile's request for admissions, Herbert and Emile admitted that a copy of this resolution was genuine. In her answer to Mercantile's request for admissions, Elaine denied that this resolution was genuine.

By resolution passed in September, 1967, the shareholders and directors of Carp's, Inc. authorized the corporation to borrow $1,200,000.00 from Mercantile. In their answer to Mercantile's request for admissions, both Herbert and Emile admitted the copy of the resolution was genuine, and, in their depositions, both testified that they signed the authorization. At that time, Herbert was president and Emile was executive vice-president of the corporation. Their signatures appear twice, once as a shareholder and the other as a director.

On October 30, 1970, all three defendants signed a "Continuing Guaranty" which stated: "FOR VALUE RECEIVED", the guarantors unconditionally guarantee to Mercantile "the prompt payment when due . . . of any and all indebtedness . . . now or hereafter existing, of Carp's, Inc. (Borrower) to" Mercantile. The document also stated: "This guaranty shall be continuing . . . ." Both Herbert and Emile admitted

that the Continuing Guaranty was genuine and that their signatures appeared on the document. Elaine acknowledged that she signed the Guaranty at the request of her husband but that she did not read what she was signing.

On December 31, 1970, Carp's, Inc., through its president, Herbert, entered into a term loan agreement with Mercantile for $1,300,000.00. Both Herbert and Emile admitted that this agreement was genuine, and Herbert acknowledged that he signed it. Herbert was president of Carp's, Inc. when he signed the term loan agreement and he was authorized by the board of directors to sign it. Elaine denied that this agreement was genuine.

On December 31, 1970, Carp's, Inc., through its president, Herbert, executed a promissory note for $1,300,000.00 to Mercantile. Subsequently, two other promissory notes were executed by Carp's, Inc. in the amount of $200,000.00 each. Note 75002 for $200,000.00 is dated December, 1972. Note 75548 for $200,000.00 is dated November 19, 1972. Both Herbert and Emile admitted that each note was genuine. In his deposition, Herbert testified that he signed all three notes and, in his deposition, Emile testified that he signed notes 75002 and 75548. At the time each note was executed, Herbert was president, and he was authorized by the Board of Directors of Carp's, Inc. to execute each one. Emile did not know if he had written authorization but testified that a "document was given to me, I had a certain job, it was acceptable to whomever my signature was acceptable if I signed it."

By affidavit, Mercantile's "manager of discount department" set out in detail the computation of the principal and interest due and owing from Carp's, Inc. on the notes after credits were made. The aggregate amount was $1,026,652.39.

Mercantile's motion for summary judgment was granted, and judgment was entered against the defendants, jointly and severally. Each defendant appealed from

that judgment and the appeals were consolidated.

To determine the propriety of a summary judgment, we view the record in the light most favorable to the parties against whom the judgment was entered. *E.g., Phegley v. Porter—DeWitt Construction Company,* 501 S.W.2d 859, 863 (Mo. App.1973). A summary judgment may be rendered only where it is made manifest by the record, including pleadings, depositions, admissions and affidavits, that there is no genuine issue of material fact. Rule 74.-04(c); *Stanturf v. Sipes,* 447 S.W.2d 558, 560 (Mo.1969). A genuine issue of material fact exists whenever there is the slightest doubt about the facts. *E.g., Maddock v. Lewis,* 386 S.W.2d 406, 409 (Mo.1965), cert. den., 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 (1965). The burden is upon the movant, Mercantile here, to show by "unassailable proof" that there is no genuine issue of fact. Rule 74.04(h); *Phegley v. Porter-DeWitt Construction Company, supra* 501 S.W.2d at 863.

Defendants raise three basic issues which, they contend, warrant reversal of the summary judgment. First Elaine, alone, complains there was no consideration for her execution of the guaranty. Second, each of the defendants now questions the corporate authority of Carp's, Inc. to execute the notes and they also question the authenticity of the 1953 resolution of the board of directors of Carp's, Inc. Finally, each of them now questions the amount of principal and interest owing and they also question whether Mercantile improperly liquidated certain assets.[1]

As we perceive Elaine's complaint of lack of consideration, it is two pronged. The record shows her only connection with Carp's, Inc. was through her husband Herbert. She was not and had never been a stockholder, director, officer or employee of Carp's, Inc. Because of this absence of relationship with Carp's, Inc., she apparently first argues, she received no benefit from the guaranty and, therefore, she apparently reasons, she received no consideration for her executing the guaranty. This argument is misdirected and, thus, misses the mark.

A guaranty is a contract, and, like all contracts, a guaranty must be supported by consideration. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 27 (Mo.App.1978). However, the consideration need not move only between the creditor and guarantor. *Kurtz v. Fischer,* 600 S.W.2d 642, 646 (Mo.App.1980); *Don L. Tullis & Associates, Inc. v. Gover,* 577 S.W.2d 891, 896 (Mo.App.1979). Benefit to the debtor, the party primarily liable, or detriment to the creditor is sufficient consideration to support a guaranty, *e.g., Kurtz v. Fischer, supra* 600 S.W.2d 646, and "it is not necessary that the guarantor derive any benefit from either the principal contract or the guaranty." *Don L. Tullis & Associates Inc. v. Gover, supra* 577 S.W.2d at 896. *Accord, Industrial Bank & Trust Co. v. Hesselberg,* 195 S.W.2d 470, 474 (Mo.1946). Thus, even though Elaine received no "benefit" for her guaranty, consideration could be supplied by a benefit to Carp's, Inc. or a detriment to Mercantile.

Stripped of its redundant verbiage and legal jargon, the "Continuing Guaranty" here is simply a divisible offer for a series of separate unilateral contracts. *See* Restatement of Contracts, Second, § 31, Comment (b). By her guaranty, Elaine was simply offering to guarantee the payment by Carp's, Inc. of each loan advanced by Mercantile, and Mercantile's act of advancing each loan would be the acceptance of the divisible offer and the consideration supporting each separate unilateral contract. *Ralston Purina Co. v. Nabisco Inc.,* 541 F.2d 679, 684 (8th Cir.1976); *Restate-*

---

1. We limit our review only to those issues raised in defendants' points. *Pruellage v. De Seaton Corporation,* 380 S.W.2d 403, 405 (Mo. 1964); *Brewer v. Blanton,* 555 S.W.2d 381, 383 (Mo.App.1977).

ment of Contracts, *supra,* § 31; *see also Industrial Bank & Trust Co. v. Hesselberg,* 195 S.W.2d 470, 474 (Mo.1946) and *Miner v. Bennett,* 556 S.W.2d 692, 695 (Mo.App.1977). "The distinguishing feature of such an offer is that, when it has been accepted and has thus become a contract, it still remains an offer as to future loans and renewals." *Security State Bank v. Gray,* 224 Mo.App. 980, 25 S.W.2d 512, 515 (Mo.App.1929). The present record discloses that Mercantile advanced the $1.7 million to Carp's, Inc. in three separate loans, each evidenced by a promissory note. Thus, the record does disclose adequate consideration for Elaine's guaranty.

 Elaine next argues that because she had no interest or office in Carp's, Inc. and because she did not read the "Continuing Guaranty" before signing it, she should not be held liable based upon "principles of fairness and equity." Elaine cites no authority supporting this argument, because there is none. A guarantor's liability for a corporation's debt is not dependent upon the guarantor's interest in the corporation. 38 Am.Jur.2d Guaranty, § 42 et seq. (1968). Thus, Elaine's lack of interest in Carp's, Inc. is not relevant to the issues here. Moreover, her failure to read the "Continuing Guaranty" does not permit her to escape liability. As noted, a guaranty is a contract, *e.g., Edwards v. Heidelbaugh, supra* 574 S.W.2d at 27, and, absent fraud, accident or mistake, a party is "held to have had knowledge of a contract which he or she had an opportunity to read but did not by reason of 'indolence, folly or careless indifference to the ordinary and accessible means of information.'" *Lynch v. Webb City School Dist. No. 92,* 418 S.W.2d 608,

617 (Mo.App.1967); *Sanger v. Yellow Cab Company, Inc.,* 486 S.W.2d 477, 481 (Mo. banc 1972). The record does not show and Elaine does not contend she signed the guaranty because of fraud, accident or mistake or inability to read. She simply neglected to read the guaranty because, as a "dutiful wife," she followed her husband Herbert's request to sign. Under these circumstances, her failure to read the guaranty she signed does not release her from the terms of the guaranty.

Next, all three defendants question the corporate authority of Carp's, Inc. to execute the notes in question and also question the authenticity of the 1953 resolution of the board of directors of Carp's, Inc. More specifically, defendants, in their respective affidavits, aver the obvious fact that the term loan agreement for $1,300,000.00 executed on December 31, 1970, exceeded the limitation placed on the borrowing of Carp's, Inc. in the 1977 Board of Directors' resolution by $100,000.00. They also aver that the subsequent notes, note 75002, for $200,000.00 and note 75548, for $200,000.00, were unauthorized.[2]

 Herbert Carp signed each of the notes in question while he was president of the corporation. Even if Herbert were not authorized to sign the notes in question, the defendants would still be liable on their guaranty. If a president of a corporation has borrowed money without express authority from the corporate board of directors, the corporation is nevertheless liable for the proceeds if it has accepted the borrowed money, and the guarantor of corporate debts would be in no better position than the corporation to deny liability. *Linwood State Bank v. Lientz,* 413 S.W.2d 248,

**2.** Defendants make the following argument without cited authority:

"[Defendants] have pointed out to the trial court that the term loan agreement exceeded the limitation placed on the corporation by the majority of the stockholders and directors by $100,000. [Defendants] have also pointed out that each of the promissory notes for $200,000 was unauthorized by corporate

resolution. [Defendants] contend that any liability they incur cannot exceed the liability which Carps, Inc. was authorized to incur. [Defendants] further question the authority of July 8, 1953 Resolution of the Board of Directors authorizing loans from Respondent. Said resolution bears only one signature, that of Zolo Carp, now deceased."

253 (Mo.1967); *Farmers & Merchants Bank v. Burns & Hood Motor Co.,* 295 S.W.2d 199, 202 (Mo.App.1956). In the *Linwood* case, the plaintiff bank obtained judgment against the guarantor of a corporate note in the face of a challenge to the corporation's authorization of the borrowing in question. Although the bank had a resolution of the corporation's directors authorizing the borrowing, there was no record in the corporate minutes that such a resolution had been passed. The guarantor denied knowledge of the resolution and asserted that the corporation was not authorized to borrow. In rejecting this contention, the court stated: L.C. 253

> "Lientz Company, Inc. (corporation), would not be permitted to avoid the obligation on the grounds of lack of authority of its officers. The law in this regard is stated in *Farmers & Merchants Bank v. Burns & Hood Motor Co.,* Mo.App., 295 S.W.2d 199, 202, as follows:
>
>> 'Although the instant note was concededly executed by the president of defendant company, in the absence of express authority from the board of directors, and therefore contrary to the provisions of the applicable by-law, we must nevertheless hold that the note constitutes a binding obligation. This follows because the law is well settled that where, as here, a corporation with knowledge of the act has ratified it, or has accepted the consideration of the note, it will be as much bound as if the note had been originally executed in exact conformity with the provisions of its by-laws.'
>
> [citations omitted] The appellant-guarantor stands in no better position than the debtor, and, therefore, cannot avoid the obligation on this ground [citations omitted]."

From the present record, there is no dispute that Carp's, Inc. received the consideration of $1.7 million for the notes in question and that the sum noted in the affidavit of Mercantile's "manager of discount department" is due and owing, in principal and interest, on these notes. On these facts, Carp's, Inc. could not assert lack of authority as a defense to the borrowings of its officers and the resulting debt, and the defendants, as guarantors, have no better defense than Carp's, Inc. has against Mercantile's claim.

Finally, defendants question the amount of principal and interest due and owing on the notes, and they also contend that Mercantile sold certain assets of Carp's, Inc. at "chilled" prices which resulted in Carp's, Inc. owing a greater debt than it should. To support these contentions, defendants rely on their affidavits which merely reflect defendants' "doubts" about Mercantile's computation of principal and interest and "doubts" about the prices paid for the assets in question. For example, in their affidavits, defendants state they "doubt the correctness of the manner whereby [Mercantile] calculated principal and interest" payments, and they also "doubt whether [Mercantile] . . . sold assets of Carp's, Inc. for fair prices." By failing to aver specific facts explicitly showing Mercantile's calculations were improper and by relying upon mere "doubts" and speculation, defendants failed to raise any issue of material facts about the calculation of defendants' debt. Rule 74.04(e); *See Waltz v. Cameron Mutual Ins. Co.,* 526 S.W.2d 340, 343 (Mo.App.1975); *Jameson v. Jameson,* 176 F.2d 58, 60 (D.C.Cir.1949).

Judgment affirmed.

PUDLOWSKI, J., and GUNN, Special Judge, concur.