**MERCANTILE BANK OF SIKESTON, a Corporation, Plaintiff–Respondent,**

v.

**J. Handy MOORE and Dorothy Moore, his wife, Defendants–Appellants.**

No. 16087.

Missouri Court of Appeals, Southern District, Division Two.

June 13, 1990.

Motion for Rehearing or to Transfer Denied July 2, 1990.

Application to Transfer Denied July 31, 1990.

Manuel Drumm, Drumm, Winchester & Dement, Sikeston, James E. Reeves, Ward & Reeves, Caruthersville, for defendants-appellants.

Joseph P. Fuchs, Sikeston, for plaintiff-respondent.

PER CURIAM.

Defendants J. Handy Moore and Dorothy Moore appeal from a summary judgment entered against them and in favor of plaintiff Mercantile Bank of Sikeston pursuant

to a motion for summary judgment filed by the bank.

Rule 74.04(c)[1] provides that a motion for summary judgment "shall state with particularity the grounds therefor." The bank's motion does not state any grounds on which summary judgment is sought.

Both sides have filed extensive briefs on the complicated issues. At oral argument, counsel for the bank expressed dissatisfaction with the appellants' record on appeal. Rule 81.12(c) reads in pertinent part:

"The appellant shall also prepare the legal file and deliver a copy to the respondent. Documents that are needed for the legal file shall be ordered from the clerk within thirty days after the notice of appeal is filed.

If the respondent is dissatisfied with the appellant's record on appeal, the respondent may file within the time allowed for filing respondent's brief such additional parts of the record on appeal as respondent considers necessary."

The motion on which the summary judgment was based is defective. A gratuitous examination of the briefs and the instant record fails to show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c). An extended opinion on the instant record would serve no precedential purpose.

The judgment is reversed and the cause remanded.

All concur except MAUS, J., who dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I dissent. The two bases upon which I do so require a statement of the background of this case. The case was briefed and submitted by oral argument on October 19, 1989. An opinion was written affirming the judgment of the trial court and adopted by the court. The defendants' Motion for Re-hearing was sustained. The case was again orally argued and resubmitted June 6, 1990.

First, I do not believe the judgment should be reversed because the plaintiff's motion for summary judgment does not meet the requirements of Rule 74.04(c). Even a complete failure to state with particularity the grounds for such a motion has been held not to mandate reversal of the judgment of a trial court. *Commerce Bank of Joplin, N.A. v. Willis,* 785 S.W.2d 787, 789 (Mo.App.1990). In that case the court stated:

"Because the motion for summary judgment did not comply with Rule 74.04(c), the trial court and this court would have been justified in determining that summary judgment based on it was improper. However, the sufficiency of the motion is not questioned, the record is relatively uncomplicated, and through the affidavit referred to and the suggestions in support of the motion, we are able to determine the basis for the judgment. Therefore, in keeping with the mandate of Rule 84.14 that unless justice otherwise requires, the appellate court shall finally dispose of the case, we proceed to consider defendants' point on appeal."

The court found no abuse of the trial court's discretion in entering a summary judgment and affirmed that judgment. The history and background of this appeal demonstrate that rationale is particularly applicable in this case.

Moreover, the record does not establish the plaintiff's motion failed to comply with the rule. In addition to the customary allegations, the motion contains the following paragraph.

"This Motion for Summary Judgment is filed by Plaintiff, Mercantile Bank of Sikeston, as to Count I, Count II, Count III, Count IV and Count V of Plaintiff's Petition herein filed. Plaintiff's supporting Affidavit and Memorandum in Support of Plaintiff's Motion for Summary Judgment address each Count separately."

The affidavit referred to is attached to the motion in the Legal File. The memorandum is not. However, that does not mean

---

**1.** All references to rules are to Missouri Rules of     Court, V.A.M.R.

the memorandum was not properly considered a part of the motion stating "with particularity the grounds therefor." The motion must be considered in the light of the following.

"An exhibit to a pleading is a part thereof for all purposes." Rule 55.12.

The exhibit or memorandum attached to the plaintiff's motion may very well state with particularity the grounds for the motion.

In fact, the record demonstrates the defendants were well aware of the primary issue presented by the motion for summary judgment. Their motion filed in the trial court to amend the summary judgment includes the following paragraph.

"A. The Court's Judgment on Counts I and II depend upon plaintiff's theory that the parol evidence rule precludes any evidence by either defendant Moore or plaintiff ex-bank president Thompson as to the intent of the Continuing Guaranty signed in December 1984. The law provides many exceptions to the parol evidence rule and allows evidence of the intention of the parties, to wit:".

This is followed by the citation of authorities. The defendants' brief on appeal addresses that issue.

The mandatory contents of the record are prescribed by Rule.

"The record on appeal shall contain all of the record, proceedings and evidence *necessary to the determination of all questions to be presented*, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a). (Emphasis added.)

Presumably the defendants were aware of the questions to be presented on appeal on their behalf. It was the duty of defendants as appellants to supply the record necessary to the consideration of those questions. Rule 81.12(c).

The Rule does provide that if a respondent is dissatisfied with the record he may cause it to be supplemented. Rule 81.12. However, this should not be construed to place a duty upon the respondent to supplement the record with material pertaining to a question that has never been raised.

The plaintiff's expression of dissatisfaction with the record on appeal at oral argument, came in response to the first time the sufficiency of the motion for summary judgment was questioned. That expression of the plaintiff included an offer to supplement the record with a copy of the attached memorandum. The rules for supplementing the record include the following.

"If anything material is omitted from the record on appeal, the parties by stipulation, or the appellate court, on a proper suggestion or of its own initiative, shall direct that the omission or misstatement be corrected." Rule 81.12(e).

The record on appeal does not establish the allegations of the motion and memorandum are insufficient under Rule 74.04(c). I do not believe this court should reverse the judgment of the trial court on a basis not raised by the defendants and not established by the record.

Further, at no time have the defendants questioned the sufficiency of the motion for summary judgment. They did not do so in the trial court. They did not do so upon the submission of the case. They did not do so in their Motion for Re-hearing. They did not do so upon submission of the case upon re-hearing.

The anticipated scope of appellate review is well established.

"We are constrained by the rules to confine our efforts solely to the points briefed, the rules in this regard being applicable with equal force to court-tried cases as well as jury-tried matters." *Kurtz v. Fischer*, 600 S.W.2d 642, 645 (Mo.App.1980).

"Appellate review is limited to those issues presented in defendants' points and they alone need be and are considered." *Smith v. Welch*, 611 S.W.2d 398, 399 (Mo.App.1981).

"We have neither the authority nor the inclination to review this difficult legal and factual question when no claim of error concerning it has been made and when neither party has briefed the issue. To do so would deny the parties an opportunity to present arguments in support of or in opposition to the trial

court's findings and conclusions—a denial contrary to our concept of the adversary system and due process." *Clarkson Valley Est. v. Village of Clarkson Valley*, 630 S.W.2d 151, 154 (Mo.App. 1982).

The mandate of these authorities is particularly applicable in this case as the basis for the reversal is procedural and has not been even indirectly raised by the defendants' points. For each and all of the reasons stated, I dissent from the majority opinion which reverses the judgment of the trial court because the motion for summary judgment did not meet the requirements of Rule 74.04(c).

The second basis for my dissent is my belief the record supports the judgment of the trial court. The reasons for my belief are expressed in the opinion originally adopted by this court affirming that judgment. That once-adopted opinion follows.

\* \* \*

*"REVERSED IN PART; AFFIRMED IN PART*

"Plaintiff Mercantile Bank of Sikeston (Bank) was granted summary judgments on four counts against defendant J. Handy Moore, as guarantor of the payment of four notes executed by Moore–Dupont Wineries, Inc. as the general partner for Pentad, Ltd., a Limited Partnership. Bank was granted a summary judgment on one count against Dorothy Moore as comaker of a note executed by Pentad, Ltd. Defendant J. Handy Moore appeals from the judgment upon two of the four counts. Defendant Dorothy Moore appeals from the judgment against her.

"The following is a summary of the background facts. The limited partnership of Pentad, Ltd. was formed to produce and market wine. The general partner was Moore–Dupont Wineries, Inc. The limited partners were J. Handy Moore, Sarkis V. Sarabian, Dale P. Smith, Fredoon S. Nury, and Jean René Dupont.

"On September 5, 1984, Pentad, Ltd. and the limited partners and Moore–Dupont Wineries, Inc., as general partner, executed a Real Estate Note in the amount of $250,-000 and a Simple Interest Consumer Finance note in the amount of $200,000, payable to Bank. In connection with those notes, each limited partner and his wife executed a 'Limited Continuing Guaranty' in favor of Bank. Each Limited Continuing Guaranty recited that the undersigned desired to personally guarantee payment of the aforesaid notes. Each contained the following limitation.

'(a) The undersigned guarantors personally guarantee along with all other makers of the two notes aforesaid the payment to Mercantile Bank of Sikeston of the first $100,000 of any balance due on the combined original indebtedness hereinbefore described. After the combined original indebtedness on the two notes aforesaid is reduced by $100,000, the undersigned guarantors further personally guarantee payment of 20% of any remaining balance due on the combined indebtedness of the two notes aforesaid.'

"On December 17, 1984, Moore–Dupont Wineries, Inc. executed its Simple Interest Consumer Finance note in the amount of $150,000, payable to Bank. On December 18, 1984, Pentad, Ltd., by its limited partners and Moore–Dupont Wineries, Inc., as general partner executed a Real Estate Note in the amount of $25,000, payable to Bank. On December 17, 1984, each limited partner executed a 'Continuing Guaranty' in favor of Bank. Each Continuing Guaranty contained the following clause.

'For Value Received, The undersigned (Guarantor) hereby absolutely and unconditionally guarantees to Mercantile Bank of Sikeston (Bank), a corporation, the prompt payment when due, in accordance with the terms thereof, of any and all indebtedness or other obligations for the payment of money, evidenced by notes, bonds, or other negotiable or non-negotiable instruments, or in any manner whatsoever, now or hereafter existing of Moore–Dupont Wineries Inc. (Borrower) to Bank, together with any and all extensions or renewals thereof.'

Bank required the execution of the Continuing Guaranty as a prerequisite to making the loans evidenced by the notes of December 17, 1984 and December 18, 1984, because of the borrower's inadequate collateral.

"On April 12, 1985, Pentad, Ltd., by its limited partners, executed its Simple Interest Consumer Finance note in the amount of $125,000, payable to Bank. The wife of each limited partner signed opposite the signature of her husband in the following manner.

"PENTAD, LTD., A LIMITED PARTNERSHIP

| BY: | /s/ Dale P. Smith | Ltd.Ptnr. | /s/ | Betty M. Smith | his wife |
| | /s/ Fredoon S. Nury | Ltd.Ptnr. | /s/ | Lila Nury | his wife |
| | /s/ Sarkis V. Sarabian | Ltd.Ptnr. | /s/ | Virginia Sarabian | his wife |
| | /s/ J. Handy Moore | Ltd.Ptnr. | /s/ | Dorothy Moore | his wife |
| | /s/ Jean René Dupont | Ltd.Ptnr. | /s/ | Lovelle C. Dupont | his wife" |

---

"The petition in this action was filed July 20, 1987. In each count the Bank alleged that the note, the subject of that count, was due and although payment had been demanded, it had not been made. Each contained a prayer for judgment in a principal amount, plus interest, and for reasonable attorney's fee.

"On June 9, 1988, Bank filed its motion for summary judgment. The evidentiary material before the trial court consisted of an affidavit accompanying the motion and unanswered requests for admissions. That affidavit was made by the president and chief executive officer of Bank. It stated as follows.

'2. That the following figures and amounts are the correct, accurate and true amounts due and owing on each of the Promissory Notes hereinafter listed. That the amounts hereafter shown are taken from the calculations and business records of Mercantile Bank of Sikeston and are true and accurate.'

This was followed by the date of each note, the original principal amount, the principal amount then due, interest calculated to June 15, 1988, an attorney's fee and total.

"J. Handy Moore filed his affidavit in opposition to the motion for summary judgment. That affidavit recited the history of the limited partnership and the various loans. The affidavit contained the following statements upon which the defendants rely.

'It was my intent and understanding and it was the intent and understanding of Stan Thompson, President of Mercantile Bank of Sikeston, that this Continuing Guaranty was not to replace or supersede the original Limited Continuing Guaranty in any way. After the execution of the second Guaranty, a real estate loan of $25,000.00 was made to Pentad, Ltd., and a loan of $150,000.00 was made to Moore–Dupont Wineries, Inc.

A subsequent loan of $125,000.00 was made to Pentad, Ltd., a Limited Partnership, which is not covered by any Guaranty of any kind. This loan of $125,000.00 was required by Mercantile Bank to be signed by Pentad, Ltd., a Limited Partnership, which the said Mercantile Bank prepared for each of the five Limited Partners and their wives to sign as Limited Partners because Mercantile Bank stated "real estate" was involved. When I signed this note, I signed only as a Limited Partner.'

"The defendants also rely upon the deposition of Stan Thompson, former president and chief executive officer of Bank. This deposition also recited the history of the various loans. The general tenor of that deposition was that it was not the intent of the president that the Continuing Guaranty replace the original Limited Continuing Guaranty. That intent is expressed in answers such as the following.

'A. My intention was that the continuing guarantee that was being signed was for the Notes being made at the time of signing them from there on.

.    .    .    .    .

Q. At this time do you interpret the continuing guarantees signed in December of 1984 to have changed in any manner the limited continuing guarantees signed on the September, 1984 loans?

A. In my mind, no.'

He also testified that he thought the Continuing Guaranty would be applicable to the note executed on April 12, 1985 in the amount of $125,000, signed by the limited partners and their wives.

"J. Handy Moore's first point is '[t]he trial court erred in entering its order for summary judgments on Count I and II for respondent Bank on the $250,000 real estate note and $200,000 note of Pentad, Ltd. by relying solely upon the Continuing Guaranty of December 17, 1984 and in complete disregard of the Limited Continuing Guaranty of October 9, 1984' for reasons expressed in six subpoints. Five of those subpoints are based upon his affidavit and former president Thompson's deposition testimony that neither intended the Continuing Guaranty to apply to the previously executed $250,000 note and $200,000 note. The sixth subpoint asserts that parol evidence is admissible to establish that error. He argues, 'We are not trying to change one word in the subsequent guaranty, but we are trying to determine which guaranty applies to which notes.'

"The parol evidence rule is frequently stated in the following terms:

'That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence.' *Commerce Trust Co. v. Watts,* 360 Mo. 971, 977, 231 S.W.2d 817, 820 (1950).

"J. Handy Moore's position is based upon the proposition that his intention, and Thompson's intention, establish a mutual mistake within the meaning of the foregoing limitation upon the application of the parol evidence rule.

"However, the cited limitation on that rule does not establish that every mutual mistake may be asserted to vary the terms of a writing in every action. A fundamental restriction upon the application of that limitation has been stated as follows.

'It is the [sic] well-settled that parol agreements made prior to or contemporaneously with the execution of a note, which merely tend to contradict or vary the terms of the note, *cannot be raised as a defense* to a suit on the note.' *Bank of Kirksville v. Small,* 742 S.W.2d 127, 133 (Mo. banc 1987) (emphasis added).

A party may not reform an instrument by interpretation. *Herrick Motor Co. v. Fischer Oldsmobile Co.,* 421 S.W.2d 58 (Mo.App.1967). The following is a re-statement of the principle controlling this case.

'In our view of the case the controlling issue is whether the bond, by its terms, covers this loss. This is an action at law based upon this written contract of the parties. If by mutual mistake or otherwise, the contract does not express the true intention of the parties, the court cannot, at least in an action at law, re-write it, and unless it is ambiguous, rules of construction cannot be invoked for the purpose of imparting an ambiguity that does not in fact exist.' *National Surety Co. v. McGreevy,* 64 F.2d 899, 900–901 (8th Cir.1933), cert. denied, 290 U.S. 644, 54 S.Ct. 62, 78 L.Ed. 559 (authorities omitted).

"J. Handy Moore cites *Fulton v. Bailey,* 413 S.W.2d 514 (Mo.1967). In that case, a realtor, in completing a short-form contract, left out a proviso the buyers' obligation to purchase was contingent upon obtaining a loan. The buyers signed without reading the contract. Under these circumstances, the court held the realtor's error constituted a mutual mistake and created a jury issue 'as to whether the short-form contract embodied all the terms of defendant's offer.' *Id.* at 518. It is generally held that

'failure to read the "Continuing Guaranty" does not permit [the party] to escape liability. As noted, a guaranty is a contract, e.g., *Edwards v. Heidelbaugh,* supra 574 S.W.2d [25] at 27 (Mo.App.1978), and, absent fraud, accident or mistake, a party is "held to have had knowledge of a contract which he or she had an opportunity to read but did not by reason of 'indolence, folly or careless indifference to the ordinary and accessible means of information.'" *Lynch v. Webb City School Dist. No. 92,* 418 S.W.2d 608, 617 (Mo.App.1967); *Sanger v. Yellow Cab Company, Inc.,* 486 S.W.2d 477, 481 (Mo. banc 1972).' *Mercantile Trust Co. v. Carp,* 648 S.W.2d 920, 924 (Mo.App. 1983).

It is not necessary to further consider the status of one who signs but does not read a contract. There is no suggestion in this case either party was not aware of the contents of the Continuing Guaranty or that anything was omitted therefrom.

"He also cites *Pet Milk Co. v. Boland,* 175 F.2d 151 (8th Cir.1949). In that case, Boland was allowed to prove that a construction purchase order, signed after the completion date specified in that order, was merely a memorandum to serve as a notation of unit prices. Because of the different factual situations, neither of those cases supports the position of J. Handy Moore. In fact, they recognize the principle that parol evidence is not admissible to vary a written contract. *Fulton v. Bailey,* 413 S.W.2d at 518. 'If the purchase order was the contract, under the foregoing authorities plaintiff may not vary its terms by parol evidence.' *Pet Milk Co. v. Boland,* 175 F.2d at 156.

"The essential language of the Continuing Guaranty is '[t]he undersigned (Guarantor) hereby absolutely and unconditionally guarantees to Mercantile Bank of Sikeston ... the prompt payment when due, ... of any and all indebtedness or other obligations for the payment of money, ... *now or hereafter existing* of Moore–Dupont Wineries Inc. (Borrower) to Bank,....' (Emphasis added.) The unambiguous meaning of this obligation is established by the plain meaning of the language. It is established by judicial precedent. 'The guaranty is not ambiguous and such evidence was merged into the guaranty and was not admissible.' *Commerce Trust Company v. Howard,* 429 S.W.2d 702, 706 (Mo.1968). Also see *Mercantile Trust Co. v. Carp,* supra; *Centerre Bank of Kansas City v. Distributors,* 705 S.W.2d 42 (Mo.App.1985). Moore–Dupont Wineries, Inc., signed the $250,000 note and the $200,000 note as general partner. It is liable on those notes. § 359.251. By the above unambiguous language guaranteeing payment of the indebtedness of Moore–Dupont Wineries, Inc., the Continuing Guaranty is applicable to the pre-existing note for $250,000 and the note for $200,000. J. Handy Moore does not seek reformation of the Continuing Guaranty. He seeks to defend an action at law by parol evidence, which would vary the meaning of the unambiguous language.

'No imperfection or ambiguity appears in the language of the instrument as to its terms relating to limitation of the amount of guarantors' liability. Once parties have agreed and the terms of the agreement are, by the parties, embodied in plain, unambiguous, written document monumenting their agreement, prior parol negotiations are of no legal significance and cannot be considered for the purpose of showing the terms of the agreement were different from those plainly expressed in writing.' *Commerce Trust Company v. Howard,* 429 S.W.2d at 706.

'The parol evidence rule is a rule of substantive law and not a rule of evidence and evidence offered in violation of it must be ignored.' *Centerre Bank of Kansas City v. Distributors,* 705 S.W.2d at 52.

The parol evidence relied upon by J. Handy Moore does not constitute facts admissible in evidence within the meaning of Rule 74.04. It constitutes no bar to a summary judgment in favor of the Bank. *Kreutz v. Wolff,* 560 S.W.2d 271 (Mo.App.1977). J. Handy Moore's first point has no merit.

"J. Handy Moore's second point is that the Limited Continuing Guaranty and the

Continuing Guaranty were executed subsequent to the execution of the $250,000 note and the $200,000 note and the evidentiary material does not establish a consideration for either guaranty. The deposition of former president Thompson establishes the execution of the Continuing Guaranty was required by the Bank as a condition precedent to the Bank making subsequent loans to Pentad.

'[T]he consideration need not move only between the creditor and guarantor.... Benefit to the debtor, the party primarily liable, or detriment to the creditor is sufficient consideration to support a guaranty, ... and "it is not necessary that the guarantor derive any benefit from either the principal contract or the guaranty." ' *Mercantile Trust Co. v. Carp*, 648 S.W.2d at 923 (citations omitted).

The second point is denied.

"The third point is that the trial court erred because the terms of repayment of the $250,000 note and the $200,000 note were for the payment of interest only from September 5, 1984 to March 5, 1985, with the principal amounts of the notes to be then amortized over twenty years. He relies upon that portion of the $250,000 note which provides it is payable 'on demand and if no demand then interest payments only until March 5, 1985 and at that time a monthly schedule will be set up for repayment on a twenty-year amortization'.

'In a suit on a promissory note a prima facie case is made when the note, admittedly signed by the makers, is introduced and evidence follows demonstrating the note is unpaid or that a balance is due and owing.' *Bank of Kirksville v. Small*, 742 S.W.2d at 130.

The affidavit in support of the motion for summary judgment states 'the following figures and amounts are the correct, accurate and true amounts due and owing on each of the Promissory Notes hereinafter listed.' Each note, including the $250,000 note and the $200,000, note was listed with the amount due. This affidavit made a prima facie case that a demand had been made within the terms of those notes and they were due. Cf. *Southard Const. Co. v.*

*Structural Systems*, 715 S.W.2d 560 (Mo. App.1986), (overruled on other grounds), in which an affidavit reciting that the plaintiff had 'performed all of its obligations' was held to be sufficient. Also see *Bank of Brookfield–Purdin, N.A. v. Burns*, 724 S.W.2d 262 (Mo.App.1986). There was no evidentiary material disputing the affidavit. The third point has no merit.

"J. Handy Moore's final point is that the trial court erred in awarding interest and attorney's fee in connection with the $250,-000 note and the $200,000 note. He argues that the Continuing Guaranty contains no provision for the payment of interest or attorney's fee. However, the $250,000 note does provide that the maker shall pay an attorney's fee of 15%. Each note provides the maker is to pay interest at a specified rate. The Continuing Guaranty obligates the guarantor to pay 'any and all indebtedness'. That obligation encompasses the payment of interest on both notes and attorney's fee provided for in the $250,-000 note.

"However, he also complains that a judgment upon Count II, pertaining to the $200,000 note, is erroneous because that note does not provide for the payment of attorney's fee. That note does not contain such a provision. The Bank attempts to justify a judgment upon that count for attorney's fee by the provision of the security agreement authorizing the Bank to retain, out of the proceeds of the sale of the collateral, the cost and expenses of repossession and foreclosure. This clause in the security agreement does not justify a personal judgment against J. Handy Moore for attorney's fee. That portion of the summary judgment awarding attorney's fee upon Count II is erroneous.

"Dorothy Moore's sole point is that the $125,000 note was the obligation of the limited partnership and parol evidence was admissible to explain that she was not the maker of the note. She also asserts that the evidentiary material failed to establish consideration for her obligation. The point has no merit.

"If the capacity in which Dorothy Moore signed is ambiguous, she is deemed to have

signed as an endorser. § 400.3–402. If that capacity is not ambiguous, she must be held to have signed as a maker. The affidavit of J. Handy Moore establishes that in whatever capacity she signed, Dorothy Moore signed because real estate was involved and as an accommodation to Pentad.

'Consideration was present. The evidence disclosed that appellant made a loan to the corporation and that respondents signed on the back of the note as a part of that transaction. Consideration moving to an accommodation party is not necessary to make such a party liable where consideration moves to the party accommodated.' *State Bank of Fisk v. Omega Electronics*, 634 S.W.2d 234, 238 (Mo.App.1982) (authorities omitted).

"As stated, the evidentiary material does not establish that the Bank is entitled to a judgment on Count II for attorney's fee in the amount of $4,611.08. That portion of the judgment is stricken. The balance of the judgment is affirmed."

\* \* \* \* \* \*

The issue presented by the defendants' Motion for Re-hearing is the propriety of the application of the parol evidence rule to bar consideration of the evidentiary material of mutual mistake. That was the pivotal issue argued upon resubmission. The defendants have not said anything or cited any authority which I find to demonstrate the once-adopted opinion is erroneous. They accept the statement of the parol evidence rule found in Commerce Trust Co. v. Watts, supra, set forth in the foregoing opinion. They place their reliance upon that portion of the parol evidence rule which states that rule is applicable "in the absence of fraud, duress, mistake or mental incapacity". *Commerce Trust Co. v. Watts*, 231 S.W.2d at 820. That qualification is generally recognized. However, that does not mean that parol evidence of mutual mistake is admissible irrespective of the action in which, or state of the pleadings under which, that evidence is tendered.

Perhaps the foregoing opinion may be clarified by noting the only parts of the defendants' answers to the two counts in question which can be considered as relevant to the issue of mutual mistake. The answer to Count I includes the following.

"4. This answering defendant further affirmatively states that said Note for $250,000 is not the subject to the Continuing Guaranty of December 17, 1984, termed Exhibit # 1 in plaintiff's Petition, for reason that:

(a) Plaintiff expressly represented said Continuing Guaranty was applicable only to certain loans of $150,000 and $25,000 made by plaintiff to Moore–Dupont Wineries, Inc. on December 17, 1984 and December 18, 1984.

(b) The Continuing Guaranty of December 17, 1984 was not intended to replace the Limited Continuing Guaranty of October 9, 1984, and said intention of plaintiff was expressed to this answering defendant by plaintiff's officer and employee."

The prayer in response to that count is as follows:

"WHEREFORE, having fully answered said Count I, defendant prays to be discharged and allowed to go hence with his costs."

The applicable portions of the defendants' answer to Count II are the same. The defendants filed no counterclaim.

The use of evidence of mutual mistake to change the unambiguous meaning of a written instrument requires reformation of that instrument. This is true whether such a change in an unambiguous meaning is for the purpose of recovering upon or defending against that instrument. The pertinent limitation upon the use of evidence of mutual mistake has been succinctly summarized.

"[I]t is a general rule that parol evidence is admissible in a suit to reform a written instrument for mistake, and is admissible to reform a written instrument for fraud or inequitable conduct, or accident, ... and to show the true transaction, agreement, or intention of the parties.

On the other hand, parol evidence ordinarily is not material or admissible for other purposes in such proceedings, as

simply to contradict or vary the terms of a written instrument." 76 C.J.S., Reformation of Instruments, § 83, p. 452–454.

That limitation has been restated in a very recent case.

"Traditionally, a document or an agreement may be rescinded or reformed when there is a mutual mistake of material fact—where each party labors under the same misconception, and the mistake is a common one that neither party intended. The evidence showing such mistake must be clear, cogent and convincing." *Matter of Estate of Hysinger,* 785 S.W.2d 619, 624 (Mo.App.1990).

This limitation upon the admissibility of parol evidence of mutual mistake based upon the state of the pleadings is not a matter of form, but has significant consequences. The relief of reformation presents a separate issue. It is to be decided by the court. *Teich v. Globe Indemnity Co.,* 25 S.W.2d 554 (Mo.App.1930). The party asserting mutual mistake must establish that basis for reformation by clear, cogent and convincing evidence.

"[A] party seeking reformation of a deed of trust is required to show by clear, cogent, and convincing evidence: (1) a preexisting agreement between the parties to describe the tract in accordance with the proposed reformation; (2) the mistake; and (3) the mutuality of the mistake." *Southern Missouri Sav. & Loan v. Thomas,* 754 S.W.2d 937, 940 (Mo.App.1988).

Seeking reformation of an unambiguous instrument is a distinct claim for relief.

"A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) *a demand* for judgment *for the relief to which he deems himself entitled."* Rule 55.05. (Emphasis added.)

The answers of the defendant constitute general denials.

A careful examination of a controlling opinion demonstrates that the Missouri Supreme Court En Banc has established that evidence of the purported understanding or agreement between the one-time bank president and defendant J. Handy Moore was not admissible under the state of the pleadings in this case.

"The evidence in question, excluded as violative of the parol evidence rule, was that *defendant and plaintiff's agent,* Moore, *agreed* prior to the signing of the note that defendant would receive a $1,500 credit for furniture and appliances. It is the [sic] well-settled that parol agreements made prior to or contemporaneously with the execution of a note, which merely tend to contradict or vary the terms of the note, *cannot be raised as a defense* to a suit on the note." *Bank of Kirksville v. Small,* 742 S.W.2d 127, 133 (Mo. banc 1987). (Emphasis added.)

That principle is equally applicable to this suit on a guaranty agreement.

For the reasons stated, I dissent and would affirm the judgment of the trial court.