784 F.Supp. 1434 (1992)
LANDMARK BANK OF ST. CHARLES COUNTY, Plaintiff,
v.
Gustave J. SAETTELE, et al., Defendants.
No. 91-0787C(5).
United States District Court, E.D. Missouri, E.D.
February 18, 1992.
*1435 *1436 Armstrong, Teasdale, Schlafly, Davis & Dicus, Paul N. Venker, St. Louis, Mo., for plaintiff.
The Stolar Partnership, Charles Alan Seigel, Michael A. Fisher, E. Michael Murphy, St. Louis, Mo., for defendants Gustave and Laura Saettele.

MEMORANDUM
LIMBAUGH, District Judge.
This suit involves the liability of the defendants as guarantors of certain loans made by the plaintiff Bank to Cimarron Development, Inc. Plaintiff seeks approximately $1.2 million from the defendant guarantors as the balance due and owing on three promissory notes signed on behalf of Cimarron Development, Inc. Plaintiff has filed for summary judgment averring that there are no issues of material facts regarding the defendants' execution of the continuing guaranties, the execution of the promissory notes or that Cimarron Development received the loan proceeds, the amounts due and owing on the notes, and that plaintiff has made a demand for payment. Also pending before the Court is a motion to intervene filed by Enterprise Bank. Enterprise Bank seeks intervention in order to assert a claim against certain real property that plaintiff Landmark Bank has previously attached.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia *1437 Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts relevant to the present action.
On December 20, 1983 defendants Saettele executed a personal continuing guaranty covering all loans, discounts, and renewals made by the plaintiff Bank to Cimarron Development, Inc. Cimarron Development was a real estate development company primarily involved in the construction and sale of residential housing. It was a closely held corporation with two principal shareholders. Defendant Gustave Saettele was a 50% shareholder, an officer, and a director of Cimarron (the other 50% shareholder, officer, and director is Clifford Faddis who was a defendant in a default action brought by plaintiff Bank in state court).
The December 20, 1983 guaranty (hereinafter referred to as the 1983 guaranty) was executed by Faddis, defendant Gustave Saettele, and defendant Gustave Saettele on behalf of his wife, Laura Saettele. It was executed in connection with a construction loan sought by Cimarron for a condominium project known as Sunset Park. The 1983 guaranty is a personal continuing guaranty and is on a 1-½ page standard Landmark Bank form. It covers all loan amounts and no particular loan or loan amount is specified in the document. See, Exhibit A to plaintiff's summary judgment motion for complete terms of the guaranty.
On January 13, 1984 Cimarron, through its agent Faddis, executed a promissory note with a $1 million line of credit. Under the terms of the promissory note and the extensions and renewals thereto, Cimarron owed the full balance of principal borrowed and interest thereon on May 1, 1990. Cimarron failed to pay its obligation on May 1, 1990 and the defendants Saettele have refused to pay in full the balance due and owing on the January 13, 1984 promissory note.
On April 3, 1985 Cimarron, acting through its agent Faddis, executed a promissory note with a $300,000.00 line of credit. Under the terms of the promissory note and the extensions and renewals thereto, Cimarron owed the full balance of principal borrowed and interest thereon on May 1, 1990. Cimarron failed to pay its obligation on May 1, 1990 and the defendants Saettele have refused to pay in full the balance due and owing on the April 3, 1985 promissory note.
In the fall of 1985, Cimarron approached the plaintiff Bank for the purpose of securing a construction loan for a condominium project known as Cliffridge Estates. As with the previous construction loan regarding Sunset Park, plaintiff Bank requested defendants Saettele to sign a continuing personal guaranty. On November 19, 1985 Faddis, defendant Gustave Saettele, and Gustave Saettele on behalf of his wife, Laura Saettele signed as personal guarantors.
The November 19, 1985 guaranty (hereinafter referred to as the 1985 guaranty) is a continuing personal guaranty and is on a 4-½ page standard form. The Cliffridge Estates loan agreement is specifically referred *1438 to in the guaranty as the loan agreement to which the guaranty applies. The 1985 guaranty states that it is cumulative to and does not supercede any other guaranties. See, Exhibit D to plaintiff's summary judgment motion for complete terms of the document.
The 1985 guaranty secured a promissory note executed November 15, 1985 by Cimarron, through its agent Faddis, for a $1.5 million line of credit. Under the terms of the November 15, 1985 note and the extensions and renewals thereto, Cimarron was obligated to pay the full balance of principal borrowed and interest thereon on June 15, 1990. Cimarron failed to meet its obligation on June 15, 1990 and the defendants have refused to pay the balance due and owing on the November 15, 1985 note.
At all times pertinent to this litigation, defendant Gustave Saettele was Chairman of the Board of a branch facility of plaintiff Bank known as the Landmark North County Bank and Trust Company. He has been and is a director of Landmark Bancshares Corporation. He was a member of its loan committee which was responsible for reviewing loan packages and approving/disapproving them. These loan packages sometimes contained personal guaranties. These loan packages utilized Landmark's standard forms.
At all times pertinent to this litigation, defendant Gustave Saettele had the express approval of his wife, Laura Saettele, to sign her name to each of the personal guaranties. Finally, defendant Gustave Saettele signed each of the guaranties, for himself and his wife, without reading them beforehand.
Defendants claim that the guaranties are unenforcable because they do not comply with the terms expressed in the loan applications and loan commitment letters. They further contend that officers of the plaintiff Bank misrepresented to them the nature of the continuing personal guaranties. They also contend that the guaranties are voidable due to mutual mistake, i.e. the parties used the wrong forms and did not intend for the defendants to sign continuing personal guaranties. Finally, Mrs. Saettele contends that as to her, the guaranties are unconscionable because, unlike her husband, she had no interest in securing loans for Cimarron.
The defendants argue that the guaranties in question are not the complete integration of the parties' respective agreements. They aver that one must look at the terms and conditions of the loan applications and commitment letters to formulate the "clear, complete, and final expressions of the parties' agreements". The Court disagrees. These guaranties are independent agreements between the Bank and the defendants. They are not subject to the "terms and conditions" of the loan applications and/or commitment letters. A guarantor's liability is construed strictly according to the terms of the guaranty. Boatmen's Bank v. Community Interiors, Inc., 721 S.W.2d 72, 79 (Mo.App.1986); U.S. Suzuki Motor Corp. v. Johnson, 673 S.W.2d 105, 107 (Mo.App.1984). A guaranty is collateral to and independent of any underlying agreement, and is the source of the guarantor's liability. Boatmen's Bank v. Community Interiors, at 79; Standard Meat Co. v. Taco Kid, 554 S.W.2d 592, 595 (Mo.App.1977). Any ambiguity in a guaranty agreement should arise from the agreement itself. id. Both the 1983 and 1985 guaranties are clear, complete and final expressions of the defendants' obligations to pay all the loan balances for the promissory notes signed on behalf of Cimarron Development. The guaranties unequivocably state that they are personal continuing guaranties without any limitation as to amount.
As stated before, the guaranties signed by defendants are "continuing guaranties". A continuing guaranty is simply a divisible offer for a series of separate unilateral contracts. Lemay Bank v. Harper, 810 S.W.2d 690, 693 (Mo.App.1991); Boatmen's Bank v. Community Interiors, at 79; Mercantile Trust Co. v. Carp, 648 S.W.2d 920, 923 (Mo.App.1983). It contemplates a series of transactions between the debtor and the creditor, rather than a single debt. Id. The fact that there are two continuing guaranties in this case is not *1439 disarming. There were two distinct construction projects for which the debts were incurred: Sunset Park and Cliffridge Estates. Each project had its own financial requirements. In 1983 Cimarron needed a loan for only one real estate development project and thus it was not unusual to make the guaranty non-specific as to the project. However, in 1985 Cimarron sought another real estate loan which required a larger line of credit than in 1983. Plaintiff exercised caution by requesting the defendants to sign another continuing guaranty which was expressly cumulative to and did not supercede the 1983 guaranty. By virtue of these guaranties, the defendants guaranteed all credit extended to Cimarron, including the January 13, 1984 note, the April 3, 1985 note, the November 15, 1985 note, and any other credit granted Cimarron by plaintiff Bank until the guaranties were terminated by the defendants. The defendants never terminated the guaranties.
Defendants assert that defendant Gustave Saettele was induced to sign the guaranties by virtue of fraudulent misrepresentations by certain Bank officers McNeil and Siefert. Accompanying their response to the plaintiff Bank's motion for summary judgment, defendant Gustave Saettele filed an affidavit in which he states that he specifically told McNeil and Siefert that as a pre-condition for the 1983 guaranty, the Bank must strictly adhere to the terms and conditions of the loan application and commitment letter. He further states that the Bank officers agreed and assured Mr. Saettele that the 1983 guaranty was limited to a $1,000,000.00 line of credit. See, defendant Gustave Saettele's affidavit, dated January 13, 1992, paragraph 11.
Mr. Saettele's affidavit directly contradicts his prior sworn deposition testimony and the deposition testimony of the Bank officers involved in the loan transactions. During his deposition testimony of September 24, 1991 the following question and answer was exchanged:
Q. (by Mr. Venker, plaintiff's counsel) I see. And did you talk with someone specifically at the bank about what the terms of the guaranty would actually be?
A. (by Mr. Saettele) No.
See, Exhibit A, deposition of Mr. Gustave Saettele, pg. 32, attached to plaintiff's reply brief. Plaintiff Bank contends that defendants cannot create a material issue of fact by now presenting an affidavit that contradicts prior sworn deposition testimony. The Court agrees.
In Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir.1983), the Eighth Circuit Court of Appeals held that an affidavit inherently contradicting the prior deposition testimony of the affiant and containing no explanation or clarification for the disparity fails to create a genuine issue of fact. Id., at 1365. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id., at 1365. The Court went on to note that "[i]f testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment". Id., at 1365.
The Bank officers in question testified at their depositions that no such representations were ever made to Mr. Saettele. They further testified that the guaranty forms used were the Bank's standard forms. Their only conversations with Mr. Saettele were of a congratulatory nature for attaining approval of such large loans. See, Exhibits B and C, depositions of Siefert and McNeil, attached to plaintiff's reply brief.
Defendants' assertion of mutual mistake is also meritless. Under Missouri law, an agreement may be rescinded or reformed when there is a mutual mistake of material fact, i.e. where each party labors under the same misconception, and the mistake is a common one that neither party intended. Matter of Estate of Hysinger, 785 S.W.2d 619, 624 (Mo.App.1990), citing Grossman Wrecking Co. v. Bituminous *1440 Casualty Corp., 518 S.W.2d 719, 725 (Mo.App.1975); J. Calimari and J. Perillo, Contracts, § 9-26 (1970); Restatement (Second) Contracts, § 152. The plaintiff Bank officers testified at their depositions that the forms used were the Bank's standard forms and that they knew the guaranties were unlimited and believed that the defendants knew this also when Mr. Saettele signed them. Defendants have failed to show by clear, cogent and convincing evidence that the parties used the wrong forms or that they did not intend to execute unlimited continuing personal guaranties. See, Hysinger, at 624.
Mr. Saettele never bothered to read the guaranties before signing them. Contrary to the defendants' assertions, the Court does not believe that two documents, one of which was 1-½ pages long and the other 4-½ pages long, constitute "lengthy" documents inhibitive of reading. Mr. Saettele is an educated successful businessman with many years service to a bank. He was knowledgable about bank services, especially loan transactions. The Court cannot accept his voluntary ignorance of the nature of the guaranties as justification for his defense of fraud or mutual mistake. Mr. Saettele does not aver that he was too pressed for time to read the guaranties, or that he was denied the opportunity to read them before signing them. In Missouri, "[t]he rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents..." Sanger v. Yellow Cab Co., 486 S.W.2d 477, 481 (Mo. 1972) quoting Higgins v. American Car Co., 324 Mo. 189, 22 S.W.2d 1043, 1044 (1929); see also, Wood & Huston Bank v. Malan, 815 S.W.2d 454, 459 (Mo.App.1991). Defendants have failed to show that any statements were made to them regarding the nature of the guaranties upon which they relied upon, and cannot avoid their obligations due to Mr. Saettele's own negligence in failing to read the documents before he signed them.
Finally, as to the assertions of fraud and mutual mistake, the plaintiff Bank argues that defendants have waived these defenses because they failed to raise them initially in their answer. Rules 8(c) and 9(b) Fed.R.Civ.Proc. require a party to affirmatively set forth certain defenses including fraud and "any other matter constituting an avoidance or affirmative defense." Rule 8(c). Furthermore, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b). In their answer, the defendants generally aver, as their Fourth Affirmative Defense to each of the Counts of the Complaint, detrimental reliance upon specific material representations which they consider to be untrue. The Court finds that defendants' Fourth Affirmative Defense sufficiently complies with Rules 8 and 9 so as to put the plaintiff Bank on notice as to the assertion of fraud; however defendants did not meet the requirements of Rules 8 and 9 as to their assertion of mutual mistake. Assuming arguendo, that the Court had not found defendants' defenses of fraud and mutual mistake meritless on other grounds, defendants' defense of mutual mistake would have been waived by their failure to properly assert it in their answer.
Defendant Laura Saettele cannot avoid liability on the guaranties because her husband had her express authority to sign her name to the guaranties. See, Exhibit A, deposition of G. Saettele, pg. 100, attached to plaintiff's reply brief. Consequently, Mrs. Saettele was bound by the guaranties as though she had signed them herself. See, Kahn v. Royal Banks of Missouri, 790 S.W.2d 503 (Mo.App.1990); Wenneker v. Frager, 448 S.W.2d 932 (Mo. App.1969); Freeman Contracting Co. v. Lefferdink, 419 S.W.2d 266 (Mo.App.1967). Furthermore, the fact that Mrs. Saettele may have had no interest in securing loans for Cimarron is immaterial. "Benefit to the debtor or detriment to the creditor constitutes sufficient consideration to support a guaranty since a guarantor need not receive *1441 any benefit from either the principal contract or the guaranty." Henty Construction Co., Inc. v. Hall, 783 S.W.2d 412, 418 (Mo.App.1989) citing Mercantile Trust Co. v. Carp, 648 S.W.2d 920, 923 (Mo.App. 1983). A guarantor's liability for a corporation's debt does not depend upon the guarantor's interest in the corporation. Henty, at 418; Mercantile Trust Co. v. Carp, at 925. Mrs. Saettele may not be pleased with her husband's actions but unfortunately (for her) she is bound by them.
There is no issue of fact as to the execution of the continuing personal guaranties by the defendants. There is no claim that the defendants terminated the guaranties. There is no issue of fact as to the execution of the notes in question. There is no issue of fact as to the amount due and owing on the notes (defendants contend in a one line footnote that the amounts owed are in dispute but provide absolutely no evidence to support their contention). The undisputed facts are that the defendants executed personal continuing guaranties whose terms were clear and unequivocal, that Cimarron Development whose debts defendants were guaranteeing obtained and used the loans secured by the guaranties, and that Cimarron Development defaulted on the loans.
The Court has reviewed the legal memoranda, affidavit(s), and supporting exhibits submitted by the parties and finds that the plaintiff Bank has met its original burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law". Poller, 368 U.S. at 467, 82 S.Ct. at 488. The defendants, as the non-moving party, have failed to legally support their defenses and to set forth any specific facts or affirmative evidence which shows that there is a genuine dispute as to the execution of the guaranties or the amounts owed by virtue of Cimarron Development's default on the loans. Therefore, the Court shall grant the plaintiff's motion for summary judgment.
In light of the Court's decision regarding plaintiff's summary judgment motion, the Court will not grant Enterprise Bank's motion to intervene. Enterprise Bank sought intervention, as a judgment creditor, solely in order to protect whatever claim it may have against certain property of the defendant that has previously been attached by plaintiff Landmark Bank. Enterprise Bank has no interest in the merits of this case other than protecting and asserting a judgment lien against the same property attached by Landmark Bank. A dispute as to lien priorities regarding defendants Saetteles' real property is better left for the state court to resolve.